BEN HANSEN, APPELLANT, V. PAXTON & VIERLING IRON
WORKS, APPELLEE.

293 N. W. 415

FILED AUGUST 2, 1940. No. 30847.

*McKenzie & Dugan, Edward J. Peterson* and *Fred S. Wolfe,* for appellant.

*Rosewater, Mecham, Shackelford & Stoehr, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This is a workmen's compensation case. It has been before us previously on a procedural question, reported in 135 Neb. 867, 284 N. W. 352. After it was reversed and remanded, the case was tried in the district court on its merits, and plaintiff was denied a recovery. He has again appealed to this court.

Plaintiff claimed that, while he was engaged in greasing a plate shearing machine, he fell to the floor, a distance of six feet, and lit on his buttocks. He alleged that he severely strained his sacro-lumbar joint and injured his left sciatic nerve, and that as a result thereof he had been totally dis-

abled since the date of the accident. It was his contention that, among other injuries, he had suffered a partial loss of sensation in his left leg, with a resulting nerve and muscular insecurity that impaired motion and required him to shuffle or drag his leg in walking.

Two medical experts diagnosed his difficulties as due to a herniated intervertebral disc between the fourth and fifth lumbar vertebræ, produced by the fall. Another expert, with special training and experience in injuries of this character, declared that the disability was due either to a rupture of the intervertebral disc or to a thickening of the ligament between the vertebræ, known as the ligamentum flavum, and that the only way to determine the exact cause was by an exploratory operation. He stated further that either condition would produce pressure on the nerve roots in the spinal canal, which was the principal cause of plaintiff's disability, and that, in his opinion, it was a result of the accident. All three doctors agreed that plaintiff was totally disabled.

After the evidence had been concluded, plaintiff expressed a desire to submit to an operation, to have the exact cause of the disability determined and, if possible, to have it corrected, and he requested the court to hold the matter under advisement until this had been done. The operation was performed by Dr. J. J. Keegan, a neurological surgeon, who had previously examined plaintiff, but who was not called as a witness on the trial. Following the operation, the hearing was reopened. Dr. Keegan then testified that he had removed the spines and laminæ of the fourth and fifth lumbar vertebræ and had found a thickening of the ligamentum flavum which he removed; that "this thickened ligament had produced a compression of the spinal nerve roots at this level, which could be seen by a depression as the ligament was removed;" that "that condition causes a narrowing of the canal, particularly in the outer canal on that side where the nerve root passes out to go to the leg, and it is recognized that it causes symptoms of sciatic pain and low back pain which cannot be distinguished either by

symptoms or X-ray from herniated intervertebral disc;" that "with that definite history of an injury and disability immediately following it, and continued symptoms from that time, and later finding by operation of this thickened ligament, and relief thus far from serious pain following the operation, it would be my opinion that this injury definitely was related to his subsequent symptoms or caused his subsequent symptoms;" and that it would probably be a matter of two months from the time of the operation before plaintiff would have recovered from his disability and be able to return to heavy manual labor.

On defendant's side, the case was strenuously contested on every issue. It was contended that plaintiff had never had an accident; that, if he did, he had not been hurt; that, if he was hurt, he had fully recovered and was simply a malingerer; and that, in any event, his activity in greasing the machine was such a departure from the work that plaintiff was directed to do that the accident could not be said to have arisen out of his employment.

Defendant's evidence and argument would have us go the length of holding, in effect, that plaintiff did not fall off the machine, but that he simply lay down beside it and pretended to be hurt; that, notwithstanding he had a satisfactory record as a workman for defendant, with fifteen months of service and two increases in wages, he allowed himself to be carried off to the hospital on a stretcher and remained there for thirteen days, for the sole purpose of laying a foundation for a compensation claim; that he deliberately cultivated a leg drag and a limp for the same reason; that there is and has been absolutely nothing wrong with plaintiff, but that he is a pure malingerer; that the operation performed by Dr. Keegan did not and could not serve any useful purpose, because no abnormal ligament thickening and nerve pressure existed; and that the reason plaintiff suggested and was willing to submit to such a major operation, notwithstanding its attendant risk of life, was that it gave him an opportunity for vindication, by claiming recovery from a disability that never actually existed.

We are not willing to go this length, under the credible facts in the record. It can serve no useful purpose to detail the evidence in support of the several contentions of the parties. The thing that seems to us most persuasive and corroborative, on the various aspects of the case, is the operation performed by Dr. Keegan, with the findings and conclusions resulting therefrom. We are convinced from these that, as a result of the accident and the injury which it occasioned, plaintiff developed a thickening of the ligamentum flavum which produced a disabling nerve pressure, and that the pain disappeared when the pressure was removed. The disputes between plaintiff's and defendant's medical experts rest largely upon differences in their conclusional premises. Defendant's doctors adopted a literal viewpoint of all the facts upon which their opinions were predicated. They assumed that, when plaintiff said he fell on his buttocks, this meant that his back was straight and that he in no way jackknifed his spine, and they therefore asserted that there could have been no injuring strain on his ligamentum flavum. They took the position also that it would require some time for the ligamentum flavum to thicken as the result of an injury, and that plaintiff therefore could not have been continuously disabled from the date of the accident. They stated further that a pressure in the spinal canal was bound to produce a partial paralysis and atrophy of the nerves, and that a regeneration could not possibly have occurred as rapidly as in plaintiff's alleged recovery, following the operation.

On the issue of whether there actually was a thickening of the ligament, we feel bound to accept Dr. Keegan's findings, over the observations and opinions of the other medical witnesses. He certainly had a better opportunity than any one else to ascertain that fact from the operation. He is corroborated by two of plaintiff's doctors who watched the operation, although defendant's experts, who also were present, asserted that they saw no evidence of any abormal ligament thickening. If an abnormal thickening existed, sufficient to produce a disabling nerve pressure, it must be

attributed to the accident, for the record does not indicate that plaintiff had ever previously suffered from such an incapacity. The ligamentum flavum could not, of course, have thickened momentarily, but, as plaintiff's doctors pointed out, the immediate pain was due to the straining of the ligament and the bruising of the nerves, and this turned into a continuing pain as the ligament healed and thickened and produced a permanent nerve pressure. On the question of nerve regeneration, the viewpoint of plaintiff's doctors was that the pressure, while sufficient to produce a continuing pain, was not such as had caused a marked atrophy of the nerves and muscles, and that the elimination of the nerve pressure, by a removal of part of the ligament, would and did immediately relieve the pain and the disability which had resulted from it. They estimated that an eight weeks' healing period would enable plaintiff to recover his nerve and muscular strength and permit him to return to his previous occupation.

A number of propositions of law are discussed in the brief of each party, but most of these are principles that have been declared in our past decisions, and, in their application to the facts of the present case, call for no reiteration here. There is one proposition, however, which defendant is entitled to have discussed in connection with its contention that, in attempting to grease the machine, plaintiff had departed from the work which he had been directed to do, and that the accident therefor could not be said to have arisen out of his employment.

Defendant cites and relies upon *Hibberd v. Hughey*, 110 Neb. 744, 194 N. W. 859. In that case, compensation was denied for injuries sustained in an uncompleted elevator whose use had been expressly prohibited to plaintiff. Here, plaintiff was not prohibited from climbing onto the plate shearing machine, because it was his job to operate it. Defendant attempted to prove that, while plaintiff was the operator of the machine, the task of greasing it, as well as all other machines in the shop, was entrusted to one man, in order to insure that the greasing was properly done, and

that plaintiff had been so advised. There was proof, however, by other workmen that in practice each operator in fact greased his own machine; that plaintiff had repeatedly done the greasing work on the plate shearing machine; and that defendant's superintendent knew of that fact, because he had been seen talking with plaintiff on various occasions while he was thus engaged in greasing. An employee will not be deprived of compensation because he has violated a rule which has fallen into disuse, with the knowledge of the employer, or which has been so treated by the employer as not to be controlling on the employee's actions. *Morris & Co. v. Cushing,* 103 Neb. 481, 172 N. W. 691; *McCrary v. Wolff,* 109 Neb. 796, 192 N. W. 237; *M. P. Gustafson Co. v. Industrial Commission,* 348 Ill. 11, 180 N. E. 567. The fact that, after he had finished working with the machine, plaintiff had been directed to help paint angle irons during the afternoon, did not operate to prevent him from first putting his machine in shape for future operation, in accordance with his practice.

One other contention, perhaps, also requires consideration. Defendant insists that, if plaintiff is allowed compensation in this case, he will be receiving two allowances under the workmen's compensation law at the same time. It appears that, approximately three and a half years before this accident occurred, plaintiff sustained a heatstroke while working for another employer, and that he made a lump sum settlement for this injury on the basis of 50 per cent. permanent partial disability. The 300-week period covered by this settlement had not yet expired. The extent to which plaintiff's right might be affected, to recover additional permanent partial disability benefits by reason of another accident, during the unexpired period of his previous lump sum settlement allowance, is not here involved. The allowance which we are making is for temporary total disability or healing period during the time that plaintiff has been unable to perform the duties in which he was gainfully employed when the accident here involved occurred. His previous disability is not claimed in any way to be a contributing

factor to the temporary loss thus sustained. There is nothing in the workmen's compensation law to prevent an employee from receiving compensation for temporary total disability to perform the duties in which he is engaged at the time of an accident, merely because he is then receiving an unrelated allowance for a permanent partial disability from a previous accident. Comp. St. 1929, sec. 48-121, as amended. Whatever the employee's physical condition may be, the employer is bound to compensate him for any impairment of his existing ability to perform the duties in which he is engaged, by accident arising out of and in the course of his employment. Comp. St. 1929, sec. 48-101.

The evidence in the record indicates that plaintiff should have completely recovered from his disability within two months from the date of Dr. Keegan's operation. The judgment of the district court will accordingly be reversed, and the cause remanded, with directions to allow plaintiff compensation, at the rate of $15 a week, from the date of the accident to and including October 16, 1939, and to allow the expenses of Dr. Keegan's operation in the sum of $250. No other medical expense can be allowed, because they were not proved on the trial.

REVERSED.