DANIEL FOREMAN, APPELLANT, V. STATE OF NEBRASKA, UNIVERSITY OF NEBRASKA-LINCOLN, AND THE NEBRASKA SECOND INJURY FUND, APPELLEES.

483 N.W.2d 752

Filed May 15, 1992.   No. S-91-608.

Rod Rehm, P.C., for appellant.

Don Stenberg, Attorney General, and Lisa D. Martin-Price for appellee State.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Second Injury Fund.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The plaintiff, Daniel Foreman, sustained a low back injury on December 16, 1985, while he was employed as a sheet metal worker for the defendant University of Nebraska-Lincoln. The injury occurred when the plaintiff was lifting some large fittings for an exhaust system.

The record shows that on January 29, 1986, Dr. Louis Gogela performed a laminectomy at the L4 level of the plaintiff's spine. On August 1, 1986, Dr. Gogela released the plaintiff to return to full-time employment without restriction.

On August 16, 1986, during the course of his employment by the university, the plaintiff bent over to replace a screen in a window, and as he twisted, he felt something pop in his back. The plaintiff returned to Dr. Gogela for treatment of this injury.

On March 23, 1987, Dr. Gogela performed additional surgery to remove disk material at the L4 level of the plaintiff's spine. Dr. Gogela released the plaintiff to work in the summer of 1987, restricting him to light duties initially and eventually allowing the plaintiff to return to full-time duties without restrictions.

In a report dated July 21, 1987, Dr. Gogela stated that the

plaintiff had sustained a 10-percent permanent partial impairment of the body as a whole. Thereafter, the university made a voluntary award of permanent partial disability at a rate of 10 percent and paid the plaintiff $30.58 per week.

On October 24, 1988, the plaintiff again injured his lower back while working for the university. Following this injury, the plaintiff sought medical treatment from Dr. Ronald Schwab.

On March 1, 1989, Dr. Schwab performed a "lumbar spinal decompression with posterolateral spinal fusion L4 to sacrum, Steffe plate internal fixation L4-5 level."

After the accident of October 24, 1988, the plaintiff did not return to employment at the university. He received temporary total disability payments from November 1, 1988, to November 15, 1990, and he continued to receive permanent partial disability payments of $30.58 a week through January 26, 1989.

On October 30, 1989, Dr. Schwab completed a functional capacity form on which he indicated that the plaintiff could participate in certain restricted work activities. On November 14, 1989, Dr. Schwab wrote to Jim Weiss, a vocational rehabilitation counselor employed by the university, which stated that he believed the plaintiff could return to his former work activities if he did not lift in excess of 50 pounds. Additionally, Dr. Schwab completed an estimated functional capacity form which set forth the plaintiff's work restrictions. On December 29, 1989, Dr. Schwab estimated that the plaintiff could return to work on approximately March 1, 1990.

In a report dated March 15, 1990, Dr. Frederick Hathaway stated that the plaintiff's spinal fusion was solid and that the plaintiff could work with certain restrictions. In a supplemental report dated October 18, 1990, Dr. Hathaway expressed the opinion that the plaintiff had reached maximum medical improvement and he could have returned to work as of April 1, 1990. According to Dr. Hathaway, the plaintiff had sustained a 40-percent permanent partial impairment of the body as a whole.

This action was commenced on February 20, 1990. The petition alleged injuries occurring on December 16, 1985, August 18, 1986, and October 24, 1988. At the first hearing in this matter, the plaintiff testified that although he had not

returned to work at the university, he was working approximately 30 hours a week in various farming activities on his farm.

On October 15, 1990, Dr. Schwab reported that he estimated that the plaintiff had sustained a 30-percent disability to the body as a whole and stated that the plaintiff could return to work subject to certain restrictions.

Various vocational rehabilitation professionals interviewed the plaintiff, reviewed his medical and occupational history, and presented opinions concerning the plaintiff's loss of earning capacity.

On rehearing, the compensation court found that the statute of limitations barred the plaintiff from recovering additional compensation for the accident of December 16, 1985, and that the plaintiff was not entitled to further benefits from the accident and injury of August 16, 1986, due to the plaintiff's failure to establish by expert medical evidence that the accident caused the need for surgery in March 1987 or resulted in any permanent impairment. The compensation court concluded that the accident and injury of October 24, 1988, were compensable and that as a result thereof, the plaintiff was temporarily totally disabled from October 25, 1988, through March 31, 1990, and that he thereafter sustained a 30-percent permanent loss of earning capacity. The plaintiff was awarded compensation for $74^5/_7$ weeks for temporary total disability at the rate of $245 per week, compensation for $225^2/_7$ weeks of permanent partial disability for a 30-percent loss of earning power at $95.41 per week, mileage reimbursement for medical care, reimbursement for direct payment of medications, and vocational rehabilitation benefits if applied for in a timely fashion. The Second Injury Fund was found to have no liability and was dismissed as a party.

The plaintiff has appealed from the award on rehearing.

The plaintiff assigns as error the compensation court's findings (1) that he was no longer entitled to temporary total disability benefits from the accident and injury of October 24, 1988, (2) that the plaintiff was no longer entitled to 10 percent permanent partial disability benefits for the accident and injury of August 16, 1986, (3) that the plaintiff failed to establish

causation entitling him to benefits for the accident and injury of August 16, 1986, (4) that the plaintiff sustained a 30-percent loss of earning capacity as a result of the accident and injury of October 24, 1988, and (5) that the Second Injury Fund was not liable for any portion of benefits due the defendant.

> " 'Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the · Workers' Compensation Court. [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.' "

*Roan Eagle v. State*, 237 Neb. 961, 962, 468 N.W.2d 382, 384 (1991), quoting *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

Relying on *Briggs v. Consolidated Freightways*, 234 Neb. 410, 451 N.W.2d 278 (1990), and the testimony from his treating physician, the plaintiff argues that he is still entitled to compensation for temporary total disability because he has not reached maximum medical improvement.

A claimant who has achieved maximum medical healing is no longer entitled to compensation for temporary total disability. *Briggs, supra*. In determining whether a claimant has reached maximum medical recovery,

> "[t]he fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a

finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. . . ."

*Briggs*, 234 Neb. at 415, 451 N.W.2d at 283, quoting 2 Arthur Larson, The Law of Workmen's Compensation § 57.12(c) (1989).

In a deposition taken on January 10, 1991, after the rehearing, the plaintiff's physician, Dr. Schwab, testified that he did not believe that the plaintiff's condition had stabilized. He also stated he could not "comfortably say that he has reached maximum medical improvement at this time." However, on redirect examination, Dr. Schwab testified that he could not state with any medical certainty that the plaintiff was suffering from any additional problem that was treatable, and he had no diagnostic procedures scheduled as of the date of the deposition.

Generally, whether a worker has reached maximum medical improvement is a question of fact. *Roan Eagle v. State, supra.* Viewing the evidence in the light most favorable to the defendant, as we are required to do, we cannot say that the compensation court was clearly wrong in finding that the plaintiff had achieved maximum medical improvement by April 1, 1990, and was no longer temporarily totally disabled.

The plaintiff also contends that the compensation court erred in finding that he was no longer entitled to permanent partial disability payments of $30.58 per week. Referring to *Hansen v. Paxton & Vierling Iron Works*, 138 Neb. 589, 293 N.W. 415 (1940), the plaintiff argues that permanent partial disability benefits may be received by an injured worker in addition to temporary total disability benefits for a subsequent injury even if the total of those benefits exceeds the maximum amount of compensation benefits payable. The plaintiff's argument is without merit.

In the *Hansen* case, this court stated:

There is nothing in the workmen's compensation law to prevent an employee from receiving compensation for temporary total disability to perform the duties in which he is engaged at the time of an accident, merely because he

is then receiving an unrelated allowance for a permanent partial disability from a previous accident.

*Hansen*, 138 Neb. at 595, 293 N.W. at 418. In that case, the injury for which the worker received compensation for permanent partial disability and the injury for which the worker received compensation for temporary total disability were to different parts of the body and were unrelated. Furthermore, there is no indication that the combined payments for permanent partial disability and temporary total disability exceeded the maximum allowable under the statute.

Neb. Rev. Stat. § 48-121 (Reissue 1988) states in part:

(1) For total disability, the compensation during such disability shall be sixty-six and two-thirds percent of the wages received at the time of injury, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01 . . . .

(2) For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01. . . .

The maximum weekly benefit allowable under Neb. Rev. Stat. § 48-121.01 (Reissue 1988) is $245. After the plaintiff's injury of October 24, 1988, the defendant employer paid the plaintiff compensation for temporary total disability at the rate of $245 a week and continued to make payments of $30.58 per week for permanent partial disability until January 26, 1989.

Termination of the payments for permanent partial disability was proper because the plaintiff was not entitled to compensation in excess of the prescribed statutory maximum amount of weekly compensation. The compensation court recognized this by allowing the defendant employer a credit for $318.91 for permanent partial disability inadvertently paid to the plaintiff at the time that he was receiving temporary total disability benefits as a result of his October 24, 1988, injury.

As to the assignment of error regarding the finding that the

plaintiff had not established causation entitling him to compensation for the accident and injury of August 16, 1986, the plaintiff concedes that the issue is moot if this court finds he is not entitled to receive compensation for any permanent partial disability arising from that injury because he was already receiving the maximum compensation allowed under the statute for the injury of October 24, 1988.

The plaintiff has assigned as error the finding that he sustained a 30-percent loss of earning capacity as a result of the accident and injury of October 24, 1988; however, this error was not argued in his brief. This court will not consider errors assigned but not discussed. *In re Interest of B.M.*, 239 Neb. 292, 475 N.W.2d 909 (1991).

The final assignment of error concerns the finding that the Second Injury Fund was not liable for any part of the compensation due the plaintiff.

> "To recover from the Second Injury Fund, § 48-128, a claimant must prove by a preponderance of evidence (1) a prior permanent partial disability, (2) a second or subsequent injury which is compensable, causing permanent disability, and (3) the combination of permanent disabilities existing after such second or subsequent injury is substantially greater in degree or percentage than permanent disability from the second or subsequent injury, considered by itself and not in conjunction with the prior permanent disability."

*Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 908, 464 N.W.2d 343, 348 (1991), quoting *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987).

For a condition to constitute a preexisting permanent partial disability for which compensation can be recovered from the Second Injury Fund, the worker must have sustained at least a 25-percent loss of earning capacity. Neb. Rev. Stat. § 48-128 (Reissue 1988).

In this case, the compensation court found that the plaintiff's loss of earning capacity prior to the October 24, 1988, injury was not at least 25 percent. The record supports this finding.

The judgment is affirmed.

AFFIRMED.