Jeannette M. Eichorn, appellant and cross-appellee, v.
Eichorn Trucking, Inc., and Great West Casualty
Company, appellees and cross-appellants, and State of
Nebraska, Second Injury Fund, appellee and
cross-appellee.

532 N.W.2d 345

Filed May 30, 1995.   No. A-94-783.

John F. Simmons, of Simmons, Olsen, Ediger & Selzer, P.C., for appellant.

Don Stenberg, Attorney General, and Lynne R. Fritz for appellee Second Injury Fund.

Raymond P. Atwood, Jr., of Healey & Wieland Law Firm, for appellees Eichorn Trucking, Inc., and Great West Casualty Company.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

MUES, Judge.

Jeannette M. Eichorn appeals an order of a rehearing panel of the Nebraska Workers' Compensation Court finding that she was entitled to workers' compensation benefits based upon a 5-percent permanent impairment to her right hand and dismissing the Nebraska Second Injury Fund. Eichorn does not challenge the award against her employer and its insurer. Rather, she claims entitlement to additional benefits from the fund based upon her being permanently and totally disabled. For the following reasons, we affirm the judgment of the Workers' Compensation Court rehearing panel.

## FACTUAL BACKGROUND

Eichorn had worked as a manager, waitress, and cook for various restaurants for 15 to 20 years when, in 1978, she first experienced numbness and a tingling pain in her right hand. She sought medical attention for the problem in September 1981. Carpal tunnel surgery was performed on Eichorn's right hand in January 1982. Eichorn returned to work and subsequently began having problems with her left hand. Carpal tunnel surgery was performed on Eichorn's left hand in November 1982. Once again, Eichorn returned to work, but soon thereafter her right hand began troubling her again. A second carpal tunnel surgery was performed on her right hand in April 1983. After this surgery, Eichorn did not return to work.

In February 1984, Dr. Robert L. Horner, a hand surgeon, concluded that Eichorn had a "moderate permanent impairment of both hands" that "probably amounts to approximately 10 percent bilaterally." Eichorn's claim based on 10 percent of the scheduled compensation resulted in a lump-sum settlement which was approved in May 1985. No loss of earning power was then determined.

Eichorn assumed part-time secretarial duties for her family's business, Eichorn Trucking, Inc., in 1985 and switched to full time in 1986. The pain in her hands increased in frequency and

intensity until she finally quit working in July 1990. In August 1990, a third carpal tunnel surgery was performed on her right hand.

Over the next 2 years, Eichorn was examined numerous times by several doctors. The consensus of the doctors was that she had suffered an additional 5-percent impairment to her right hand due to her secretarial work at Eichorn Trucking, resulting in a 15-percent impairment to the right hand. Although one of the doctors who examined her reported that "[f]rom purely an objective standpoint, I feel that she should be encouraged to resume all usual activities," the consensus of the doctors who found disability in the right hand was that Eichorn could not resume her secretarial duties at Eichorn Trucking. In a report dated January 13, 1992, Gary Phillips, Ph.D., a rehabilitation consultant, concluded that Eichorn suffered from a vocational disability of 92 percent, but in the Scottsbluff area, it amounted to a 100-percent disability. In a letter dated March 16, 1992, Phillips concluded, after reviewing Eichorn's earlier medical records, that as of February 20, 1984, Eichorn had suffered a 43-percent loss in earning power.

## PROCEDURAL BACKGROUND

Eichorn filed a petition in the Workers' Compensation Court on August 28, 1991, seeking disability benefits from Eichorn Trucking and its insurer, Great West Casualty Company. The court granted the defendants' cross-petition to join the Second Injury Fund as a defendant.

In its judgment of December 22, 1992, affirming the findings and order of the single-judge, a three-judge rehearing panel found that Eichorn was entitled to disability benefits from Eichorn Trucking and Great West, but that the disability payments already made to her exceeded the benefits to which she was entitled and therefore eliminated a further award to her. The court further determined that Eichorn had a preexisting permanent partial disability of 10 percent to each hand, but because that preexisting disability did not result in compensation payable for a period of 90 weeks or more, the Second Injury Fund should be dismissed as a party defendant.

Eichorn then appealed to this court, asserting several

assignments of error, including dismissal of the fund. In a memorandum opinion dated November 12, 1993, we noted plain error and remanded the cause. We stated:

> The liability of the Fund is not an issue in this case until there has been a finding that because of a prior injury combined with the injury sustained during her employment at Eichorn Trucking, the claimant is entitled to disability compensation in excess of that already provided by Eichorn Trucking and Great West. If such a finding is made, then the responsibility rests with Eichorn Trucking and Great West to prove that the Fund is liable for the amount of disability compensation resulting from injury sustained by the claimant prior to her employment at Eichorn Trucking. . . .

> This case was put on the wrong track when the Workers' Compensation Court prematurely injected into the case the issue of the potential liability of the Fund. The court acknowledged that there was evidence in the record to support the claimant's contention that she had suffered a significant loss of earning power prior to her employment at Eichorn Trucking. Nonetheless, because the court was not convinced that the claimant's previous condition would activate the liability of the Fund under § 48-128, the court apparently refused to consider evidence of prior impairment in determining the extent of the claimant's current disability.

> The potential liability of the Fund was irrelevant to the issue of the extent of the claimant's current disability.

Our opinion recognized that Eichorn should only have been "arguing about the accuracy of that comprehensive determination of disability and compensation" and that it "should be left to Eichorn Trucking, Great West, and the Fund to litigate the issue of the degree to which the Fund may be liable for [Eichorn's] disability compensation."

The cause was remanded with directions for the Workers' Compensation Court to determine the extent of Eichorn's disability and the compensation to which she was entitled by considering evidence of her prior disability in combination with the disability sustained at Eichorn Trucking.

## PANEL'S FINDINGS

Pursuant to our mandate, the rehearing panel found that Eichorn did have a preexisting permanent partial disability as a result of the two 10-percent member impairments to her hands; that Eichorn Trucking knew of this before the last injury occurred; and that as a result of the injuries to her right hand from the Eichorn Trucking employment, Eichorn had sustained an additional 5-percent permanent partial impairment to her right hand. In specific response to the directions by this court to consider evidence of prior impairment in combination with the impairment sustained at Eichorn Trucking and to make a comprehensive determination of the extent of Eichorn's disability, the rehearing panel found that "the 5 percent impairment suffered by the plaintiff on July 26, 1990 combined with her preexisting disability to render the plaintiff totally disabled." The rehearing panel also concluded that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury considered alone and of itself.

The rehearing panel, again reasoning that the Second Injury Fund must be dismissed, construed Neb. Rev. Stat. § 48-128 (Reissue 1988). In pertinent part, that statute provides:

No condition shall be considered a preexisting permanent partial disability under this section unless it would support a rating of twenty-five percent loss of earning power or more or support a rating which would result in compensation payable for a period of ninety weeks or more for disability for permanent injury as computed under subdivision (3) of § 48-121.

In concluding that the Second Injury Fund should be dismissed, the rehearing panel acknowledged Phillips' March 16, 1992, letter which concluded that Eichorn's preexisting 10-percent impairment to each hand resulted in an earning power loss in excess of 25 percent. Nevertheless, the court was

persuaded by the arguments of the Nebraska Second Injury Fund that the Unicameral intended that schedule injuries meet the test of compensation payable for a period of 90 weeks or more. The plaintiff's preexisting

disability consisted of a rating of 10 percent of each hand which would afford her compensation for a combined period of 35 weeks. . . . Thus, the Second Injury Fund should be dismissed as a party defendant because the plaintiff's preexisting disability was from schedule injuries, and was insufficient.

The court awarded Eichorn compensation based only upon the 5-percent permanent impairment to her right hand, a scheduled member, along with the vocational rehabilitation benefits necessary to restore her to suitable employment. In doing so, it concluded that under Nebraska case law, this was the extent of compensation which Eichorn was entitled to recover from Eichorn Trucking. Eichorn appeals from this order, and Eichorn Trucking and Great West cross-appeal.

## ASSIGNMENT OF ERROR

Eichorn's sole assignment of error on this appeal is that the Workers' Compensation Court erred in determining that she was not entitled to recover against the Second Injury Fund for additional benefits based upon her total disability.

## STANDARD OF REVIEW

We note that this case was initially heard prior to the effective date of the recent amendments to the Nebraska Workers' Compensation Act. See 1992 Neb. Laws, L.B. 360. Under the former procedure, the Workers' Compensation Court rehearing panel was the fact finder.

A decision by the Workers' Compensation Court after rehearing has the same force and effect as a jury verdict, and findings of fact will not be set aside unless, after reviewing the record in the light most favorable to the successful party, an appellate court determines that those findings are clearly erroneous. *Foreman v. State*, 240 Neb. 716, 483 N.W.2d 752 (1992); *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992). Pursuant to Neb. Rev. Stat. § 48-185 (Supp. 1991), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to

warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991).

With respect to questions of law, an appellate court is obligated to make its own determination. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

## ANALYSIS

Eichorn's argument is that the findings of fact by the rehearing panel entitle her to an award against the Second Injury Fund for any additional disability suffered by her as a result of her subsequent compensable injury occurring while employed by Eichorn Trucking.

The thrust of Eichorn's appeal is that the rehearing panel's interpretation of § 48-128 was incorrect and that since her preexisting earning-power loss exceeded 25 percent, her preexisting permanent disability qualifies her for compensation from the Second Injury Fund for total disability. The Second Injury Fund eagerly joins issue with Eichorn.

The employer and the insurer feign disinterest, as no one is challenging the award against them based upon a 5-percent member impairment to the right hand. Their position is that they agree with the rehearing panel's award, *unless* we were to increase the award against them, in which event they would join Eichorn in arguing that the Second Injury Fund should not have been dismissed, but that disability beyond 5 percent to Eichorn's hand should be compensated for out of the Second Injury Fund.

Eichorn's assigned error does not address the award against Eichorn Trucking of "8.75 weeks for a 5 percent permanent impairment to her right hand." That award is obviously based upon an impairment to a scheduled member under Neb. Rev. Stat. § 48-121(3) (Reissue 1988).

In making this award, the rehearing panel reasoned that the employer could not be liable for the partial loss of use of multiple members under § 48-121(3) because the provision of that statute addressing that subject applied only to losses of use which are the consequence of injuries sustained in a single

compensable accident, based upon *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988). The rehearing panel concluded that since Eichorn's injury at Eichorn Trucking was to a scheduled member, her compensation must be based upon her loss of physical function to that member and not upon any loss of earning capacity, citing *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983).

At oral argument, Eichorn confirmed that she is not challenging the award against the family corporation and its insurer and is not seeking benefits from Eichorn Trucking for more than a 5-percent impairment to a scheduled member, despite the finding of total disability. Thus, for purposes of this appeal, we accept Eichorn's concession and express no opinion regarding the propriety of that award.

It is true that the findings of the rehearing panel in many respects track those necessary for application of the Second Injury Fund statute, § 48-128, which provides in pertinent part:

> If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, *and if the employee is entitled to receive compensation on the basis of the combined disabilities,* the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. For the additional disability, the employee shall be compensated out of a special trust fund created for that purpose, which . . . shall be known as the Second Injury Fund.

(Emphasis supplied.)

■ As emphasized above, § 48-128 clearly requires, as a condition to entitlement to compensation from the fund, that the employee be "entitled to receive compensation on the basis of the combined disabilities." The "combined disabilities" are those from the preexisting condition and the subsequent compensable injury.

Although concluding that Eichorn's 5-percent impairment from the July 26, 1990, Eichorn Trucking accident combined with the preexisting disability to render Eichorn totally disabled and further finding that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from her last injury considered alone and of itself, the panel did not find that Eichorn was entitled to receive compensation *on the basis of the combined disabilities*. Indeed, it found just the opposite—that she was *not* entitled to compensation for the combined disabilities, concluding instead that she was legally entitled to no more than the 5-percent additional member impairment caused by the accident at Eichorn Trucking. We believe this finding is fatal to Eichorn's claim against the fund.

Eichorn candidly asserts that in this case "there is no question of shifting the employer's burden to the Fund, the issue here is the direct liability of the Fund for benefits for which the employer is not liable." Brief for appellant at 25. Eichorn cites *Runyan v. Lockwood Graders, Inc.*, 176 Neb. 676, 127 N.W.2d 186 (1964), and *Runyan v. State*, 179 Neb. 371, 138 N.W.2d 484 (1965), for the proposition that she can successfully recover benefits from the Second Injury Fund for total disability even though Eichorn Trucking is not liable for her total disability because her injuries were limited to scheduled members. *Runyan v. State, supra*, applied a former version of § 48-128 which required, inter alia, a finding that the worker be permanently and totally disabled as a result of the subsequent injury before any liability could be imposed against the Second Injury Fund and was significantly different from § 48-128 (Reissue 1988). See 1955 Neb. Laws, ch. 186, § 4, p. 532. Notably absent from the prior version of the statute was the requirement that the employee be "entitled to receive compensation on the basis of the combined disabilities."

·We have found no cases citing *Runyan v. State* for the proposition that an impaired worker is entitled to successfully prosecute an independent action directly and separately against the Second Injury Fund to recover additional compensation when there is no finding that the employee is entitled to receive compensation on the basis of a combination of the preexisting disability and the disability associated with a subsequent compensable accident.

█ From a plain reading of § 48-128 and Nebraska case law construing and applying that statute, we are led to the inescapable conclusion that § 48-128 does not exist to increase or to create rights to compensation benefits beyond those to which an employee is otherwise entitled. Rather, § 48-128 merely provides a means to shift and apportion benefits between the employer and the fund.

From a historical prospective, the genesis of second injury fund statutes is traceable to the rule requiring employers to bear the full cost of total disability for employees with preexisting disabilities. As noted by Prof. Arthur Larson, such rules provided "employers . . . a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability." 2 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 59.31(a) at 10-492.397 (1994). Professor Larson notes:

> It has been said, for example, that within the thirty days following announcement of the non-apportionment rule in *Nease v. Hughes Stone Company* [114 Okla. 170, 244 P. 778 (1925)], between seven and eight thousand one-eyed, one-legged, one-armed, and one-handed men were displaced in Oklahoma.

2 Larson & Larson, *supra*, at 10-492.397 to 10-492.398.

█ The Supreme Court has recognized that such funds were created to encourage employers to hire the handicapped, secure in the knowledge that if a work-related accident occurs, the employer and its insurance carrier are liable only for those injuries which would have resulted had there been no preexisting disability. *Parker v. St. Elizabeth Comm. Health Ctr.*, 226 Neb. 526, 412 N.W.2d 469 (1987) (citing 2 Arthur Larson, The Law of Workmen's Compensation § 59.31(a)

(1987)); *Lozier Corp. v. State*, 1 Neb. App. 567, 501 N.W.2d 313 (1993).

Absent the provisions of § 48-128, an employer is liable for all compensation benefits to which an employee is entitled. Therefore, the statute is for the benefit of the employer, as the employee has no interest in *who* pays the money, so long as he or she receives it. *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984). Because the statute benefits the employer, it is the employer's burden to prove apportionment between the portion of the injury for which the fund is liable and the portion for which the employer is liable, and generally the fund's involvement comes by virtue of the employer joining the fund in a manner akin to making it a third-party defendant. *Id*. See, also, *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987); *Lozier Corp., supra*.

In *Lozier Corp.*, this court recognized:

> [T]he controlling principle is that in the event of a compensable injury, an employer is required to bear the cost for all workers' compensation benefits from the date of the injury . . . .
>
> The exception to this requirement is the Second Injury Fund, § 48-128, which allows the employer of an injured employee to shift some of the liability for benefits for an injured employee to the Second Injury Fund. However, certain conditions, as set forth in § 48-128, must be met before the shift can occur. It is this shift of liability which is intended to encourage employers to hire those with preexisting disabilities.

1 Neb. App. at 573, 501 N.W.2d at 317.

Section 48-128 benefits the employer by shifting liability to the fund. Before a "shift" in this burden can occur, the employee must first be found to be entitled to receive compensation benefits as a result of the combined disabilities. If, as in Eichorn's case, the employee is found not to be entitled to benefits for the combined disabilities and the employer is thus liable only for the disability resulting from the subsequent last injury, there is nothing to shift to the fund and § 48-128 has no application.

It is axiomatic that it is the employee's burden, in the first

instance, to prove that he or she suffered a compensable injury and the compensation to which he or she is entitled, including whether he or she is entitled to compensation on the "basis of the combined disabilities." That issue is distinct from that of the fund's liability.

The importance of considering the employee's right to compensation separate from the Fund's liability is illustrated in *Benson, supra*. That case presented two issues on appeal—the first was the employee's right to compensation for total disability when he suffered an injury at work, and the second was whether the fund was liable for some part of the injury and resulting disability. The court noted: "These issues are separate and distinct and should be so viewed." 217 Neb. at 867, 354 N.W.2d at 130. The Supreme Court concluded that the employee had met his burden of proving that a work accident aggravated preexisting back injuries, rendering him totally disabled, and that the employer had failed to show that the total disability would have prevailed notwithstanding the work accident. It then went on to address the liability, if any, of the fund. It affirmed the dismissal of the fund, but reversed in part with directions to enter an award for the employee for total disability benefits. Thus, the employee's right to compensation was considered independent and separate from the liability of the fund and vice versa.

Eichorn's right to compensation was, similarly, an issue independent from the fund's obligation to bear a portion of the burden of that compensation. The rehearing panel found that Eichorn was entitled only to those compensation benefits arising from her injury at Eichorn Trucking, i.e., an additional 5-percent impairment to her right hand. Eichorn does not challenge that award, but, rather, insists that § 48-128 exists to enhance her compensation entitlements beyond those for which she was otherwise entitled to recover from her employer. Such a result is inconsistent with the purpose of § 48-128 and a clear reading of its terms.

Therefore, even were we to adopt Eichorn's construction of § 48-128, an issue which we need not decide, see *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994), she is not entitled to compensation from the fund under the circumstances she

presents on this appeal. Our prior memorandum opinion suggests nothing to the contrary. Indeed, we stated in that opinion:

> The liability of the Fund is not an issue in this case until there has been a finding that because of a prior injury combined with the injury sustained during her employment at Eichorn Trucking, the claimant is entitled to disability compensation in excess of that already provided by Eichorn Trucking and Great West.

## CONCLUSION

Eichorn accepts the award of the rehearing panel determining the benefits to which she is entitled from Eichorn Trucking. That award was limited to compensation only for her injury at Eichorn Trucking. Because Eichorn was not found to be entitled to receive compensation on the basis of the combined disabilities, a necessary condition to trigger the applicability of § 48-128 has not been met. There being no compensation due for "additional disability," dismissal of the Second Injury Fund was a correct result.

AFFIRMED.