BOOKER T. BRYSON, APPELLEE, V. VICKERS, INC., AND ITT
HARTFORD, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLEES
AND CROSS-APPELLANTS, AND STATE OF NEBRASKA, SECOND INJURY
FUND, THIRD-PARTY DEFENDANT, APPELLANT AND CROSS-APPELLEE.

584 N.W. 2d 44

Filed September 8, 1998.　No. A-97-1213.

Don Stenberg, Attorney General, and John R. Thompson for appellant.

Glenn A. Pettis, Jr., for appellee Bryson.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellees Vickers and ITT Hartford.

HANNON, IRWIN, and INBODY, Judges.

INBODY, Judge.
This is a workers' compensation case in which Booker T. Bryson was awarded benefits from his employer, Vickers, Inc., and its workers' compensation insurer (collectively referred to as "Vickers"). The State of Nebraska, Second Injury Fund (hereinafter SIF), was also ordered to pay benefits to Bryson pursuant to the Second Injury Fund statute, Neb. Rev. Stat. § 48-128 (Reissue 1993). SIF appeals, and Vickers cross-appeals. For the reasons set forth below, we affirm in part, and in part reverse, and remand with directions.

## I. STATEMENT OF FACTS
This is a tale of two separate compensable injuries incurred while working for the same employer. Bryson originally injured his back while in the course and scope of his employment with Vickers on April 10, 1991. On July 8, Bryson underwent surgery at the L4 level of his spine. The surgery consisted of bilateral decompressive laminotomies with foraminotomies and

was performed by Dr. John L. Greene. Bryson entered a work hardening program beginning on November 11 and ending on December 23. On January 6, 1992, Dr. Greene released Bryson to return to work at Vickers, with a limitation of 40 hours work per week for at least 90 days, and Bryson did return. At that time, Dr. Greene assigned a permanent partial impairment of 10 percent to the body as a whole. On June 2, 1993, a "Functional Capacity Evaluation" was performed on Bryson, at the request of Vickers, at the Excel Work Performance Center. According to that evaluation, Bryson was restricted to no significant lifting from the floor level, with bending and squatting limited to 10- to 15-minute timeframes.

On January 4, 1994, Bryson again hurt his back while in the course and scope of his employment with Vickers. He returned to Dr. Greene on January 13, and Dr. Greene recommended additional surgery. Dr. Greene opined that Bryson had suffered an additional 5-percent permanent impairment as a result of the second injury, for a total bodily impairment of 15 percent. On January 21, Bryson sought a second opinion from Dr. Thomas Bush, who subsequently became Bryson's primary treating physician. Dr. Bush also recommended surgery, but Bryson refused the surgery. Dr. Bush concluded that Bryson had suffered a 35-percent whole body impairment as a result of the second injury.

## II. PROCEDURAL BACKGROUND

Bryson filed his petition in the Workers' Compensation Court on January 4, 1996. Vickers filed a third-party petition impleading SIF on April 18. On March 31, 1997, a single judge of the compensation court found that Bryson's refusal to undergo surgery was reasonable and that he had reached maximum medical improvement as of August 8, 1994, the date that he told Dr. Bush he could not make up his mind whether to have the surgery. The court found that Bryson was permanently and totally disabled as a result of the combined result of the two injuries. Specifically, the court found that the 1994 injury itself imposed a 30-percent loss of earning power upon Bryson. The court also held that because Bryson had "sustained a loss of earning power in the range of 30 percent as a result of" the 1991

injury, the requirements of § 48-128 had been met, thus making SIF liable for a significant portion of Bryson's benefits. Specifically, the single judge ordered: "[SIF] should pay to the plaintiff disability benefits from and after August 9, 1994, for so long as the plaintiff remains permanently and totally disabled as a result of said accident and injury of January 4, 1994, subject to [adjustment for overlapping payments from Vickers]."

SIF applied for review. On October 31, 1997, the Workers' Compensation Court review panel affirmed. The review panel also ordered Vickers to pay Bryson $1,500 for attorney fees incurred as a result of the application for review. SIF timely appealed to this court, and Vickers cross-appealed.

## III. ASSIGNMENTS OF ERROR

SIF asserts that the compensation court erred as a matter of fact and a matter of law in holding that SIF was liable for payments to Bryson pursuant to § 48-128. In its cross-appeal, Vickers argues that the compensation court erred in (1) failing to order SIF to reimburse it for benefits it allegedly overpaid and (2) assessing attorney fees against it when the application for review was filed by SIF and not by Vickers or its insurer.

## IV. STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

■ Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *State v. Emrich*, 251 Neb. 540, 557 N.W.2d 674 (1997). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Acosta v. Seedorf Masonry, Inc.*, 253 Neb. 196, 569 N.W.2d 248 (1997).

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996). In testing the sufficiency of the evidence to support findings of fact, the evidence must be considered in the light most favorable to the successful party. *Id.*

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997).

## V. ANALYSIS

### 1. SIF APPEAL

#### (a) Apportionment of Injuries

■ SIF first argues that the evidence adduced was insufficient to permit apportionment of the disability imposed by each of Bryson's injuries, thus making § 48-128 inapplicable. Section 48-128 provides, in relevant part:

> (1) If an employee who has a preexisting permanent partial disability . . . which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury *resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself,* and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. For the additional disability, the employee shall be compensated out of . . . the Second Injury Fund . . . .

(Emphasis supplied.) The "combined disabilities" referred to in the statute are those from the preexisting condition and the subsequent compensable injury. *Eichorn v. Eichorn Trucking*, 3 Neb. App. 795, 532 N.W.2d 345 (1995). The burden of proof to establish apportionment under § 48-128 is on the employer. *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984).

> "To recover from the Second Injury Fund . . . a claimant must prove by a preponderance of evidence (1) a prior permanent partial disability, (2) a second or subsequent injury which is compensable, causing permanent disability, and (3) the combination of permanent disabilities existing after such second or subsequent injury is substantially greater in degree or percentage than permanent disability from the second or subsequent injury, considered by itself and not in conjunction with the prior permanent disability."

*Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 908, 464 N.W.2d 343, 348 (1991). Whether those factors are established is a question of fact, which will not be reversed unless clearly wrong. *Id.*

SIF also argues that the compensation court erred in assigning a 30-percent disability to the second injury, because no evidence specifically apportioned the disability due to each injury or to the combination thereof. There was, however, testimony tending to show that Bryson had suffered a distinct injury in 1994 that had caused his condition to worsen. In exhibit 8, a letter of October 3, 1996, Dr. Bush opined that Bryson's condition could be apportioned, stating that "35% of his present disability is from his second injury, January 4, 1994." Dr. Bush later testified in his deposition that he could not necessarily apportion out the injuries; however, resolution of that apparent contradiction was within the province of the trial court. "[A]n expert witness' good faith self-contradiction presents a question of fact to be resolved by the Workers' Compensation Court." *Hohnstein v. W.C. Frank*, 237 Neb. 974, 984, 468 N.W.2d 597, 604 (1991). Moreover, Dr. Bush stated in his deposition that he was convinced the combined disability was substantially greater than would have existed from the second injury alone. Finally, we note that "[w]hile expert witness testimony may be neces-

sary to establish the cause of a claimed injury, the Workers' Compensation Court does not need to depend on expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant." *Cords v. City of Lincoln*, 249 Neb. 748, 756, 545 N.W.2d 112, 118 (1996). Given our standard of review, the evidence in the record, and the acknowledged authority of the compensation court to make its own determinations of disability, we cannot say the compensation court erred on this issue.

### (b) Notice to Vickers From Written Records

SIF next argues that the written records of Bryson's preexisting condition which had been provided to Vickers did not satisfy § 48-128(2). That section requires that prior to an order transferring liability for benefits payment to SIF, "the employer must establish by written records that the employer had knowledge of the preexisting permanent partial disability . . . at the time the employee was retained in employment after the employer acquired such knowledge." SIF concedes, and the record reflects, that prior to Bryson's second injury, Vickers had been provided with written records showing that Bryson had a preexisting condition. Among those written records was a letter from Dr. Greene, dated January 9, 1992, stating that Bryson had a 10-percent impairment to his body as a whole; a copy of the work hardening evaluation performed by Excel Work Performance Center, stating that Bryson was "currently functioning at a LIGHT physical demand level" and that "there does not appear to be any reason he should be unable to perform at somewhat higher levels if he were to increase his strength and endurance through a regular exercise program"; another letter from Dr. Greene, dated June 25, 1993, stating that Bryson "is functioning at a light physical demand level. I think he can be a valuable employee *if kept at this level.*" (Emphasis supplied.) Also, on February 2, 1994, Bryson submitted a claim for short-term disability, in which he stated that he had "on going [sic] pain from the back surgery I had on July of 1992 [sic] and continuing to get worst [sic]."

SIF argues that those documents did not satisfy § 48-128(2), because they did not inform Vickers of the precise

extent of Bryson's preexisting condition. Because content of such written records is not specified in § 48-128(2), we must construe the statute. In doing so, we are guided by the principle that the Workers' Compensation Act is to be liberally construed so that technical refinements of interpretation will not be permitted to defeat it. *Phillips v. Monroe Auto Equip. Co.*, 251 Neb. 585, 558 N.W.2d 799 (1997). The purpose of the Second Injury Fund is to assure employers that if they hire or retain individuals with preexisting disabilities, those employers will be liable only for those injuries which would have resulted had there been no preexisting disability. *Parker v. St. Elizabeth Comm. Health Ctr.*, 226 Neb. 526, 412 N.W.2d 469 (1987); *Eichorn v. Eichorn Trucking*, 3 Neb. App. 795, 532 N.W.2d 345 (1995). It seems clear that those records need not contain a precise statement of an employee's exact condition. See 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 59.33(c) at 10-501 through 10-509 (1998):

> An obvious question in states requiring actual employer knowledge is: How much must the employer have known about the actual nature of the prior injury?
>
> It is clear that the employer does not have to know exactly what the employee's prior condition is in medical terms. . . .
>
> . . . .
>
> Since the second injury principle applies only to preexisting permanent conditions, the employer would have to know, not just that the employee had some abnormal condition, but that the condition was permanent in character. . . .
>
> The knowledge that the employer must have of the nature of the injury also was held to include awareness that the condition was of a kind likely to be a hindrance to employment. . . .
>
> Finally . . . it is evident that the preexisting condition of which the employer knew must be the condition that figured in the final disability.

The written records provided to Vickers put it on sufficient notice that Bryson had an abnormal, permanent condition that was likely to be a hindrance in his employment, a condition that did, indeed, figure in his final total disability. To construe the

section as requiring more would defeat the purpose of the Workers' Compensation Court. Accordingly, the compensation court did not err in ordering SIF to assume liability for compensation benefits.

## 2. CROSS-APPEAL BY VICKERS

### (a) Reimbursement by SIF

Vickers first argues that it is entitled to reimbursement from SIF for the difference between the $41,340 that Vickers paid prior to the compensation court award and the $26,515.57 the compensation court ultimately held was Vickers' obligation. Vickers seeks reimbursement under either of two theories: (1) Neb. Rev. Stat. § 48-178.01 (Reissue 1993) provides for such reimbursement, or (2) the compensation court has inherent authority to order such reimbursement.

Turning first to the argument that reimbursement is appropriate pursuant to § 48-178.01, we note that the statute provides, in its entirety:

> Whenever any petition is filed and the claimant's right to compensation is not in issue, but the issue of liability is raised as between an employer, a carrier, or a risk management pool or between two or more employers, carriers, or pools, the Nebraska Workers' Compensation Court may order payment of compensation to be made immediately by one or more of such employers, carriers, or pools. When the issue is finally resolved, an employer, carrier, or pool held not liable shall be reimbursed for any such payments by the employer, carrier, or risk management pool held liable.

The review panel found, and we agree, that this statute, by its own terms, is inapplicable. In contrast to our consideration of § 48-128(2), here, we are faced not with construction of a statute, but with simple application. The plain language of the statute provides that it applies only where the claimant's right to recovery was not in issue and the compensation court has entered an order of immediate payment. That is not the case here—Vickers had contested Bryson's right to recovery and thereby rendered § 48-178.01 irrelevant. That ends the inquiry; it is not within the province of this court to read a meaning into

a statute that is not there or to read anything direct and plain out of a statute. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996).

Vickers alternatively argues that the Workers' Compensation Court has the "inherent power" to make this adjustment. Brief for appellee Vickers at 22. The compensation court is a court of statutory creation, and its powers are limited to those delineated in the statutes. *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995). The Workers' Compensation Court has no inherent power to order that an employer be reimbursed by the Second Injury Fund for the difference between payments made pursuant to § 48-178.01 and the amount for which an employer is ultimately held liable. The Legislature set out the terms under which reimbursement should occur, and this scenario is not one of them. Again, we will not read other circumstances into the plain words of the statute. See *Village of Winside, supra.* If this statutorily mandated result is inequitable, the solution lies with the Legislature and not with this court. The compensation court has no equitable powers. *Anthony v. Pre-Fab Transit Co.*, 239 Neb. 404, 476 N.W.2d 559 (1991). If the result appears unreasonable, that, again, is an issue for the Legislature. "While we may not understand the Legislature's motivation, we are bound to follow its statutory mandate." *In re Estate of Nelson*, 253 Neb. 414, 419, 571 N.W.2d 269, 273 (1997).

Finally, Vickers argues that this court has tacitly endorsed such orders of reimbursement because we did not reverse a compensation court order of reimbursement in *Lozier Corp. v. State*, 1 Neb. App. 567, 501 N.W.2d 313 (1993). That argument is not well taken in light of the fact, which Vickers candidly admits, that the issue of reimbursement was not raised by either party and was not necessary for disposition of the appeal. "It is axiomatic that a case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court." *Grammer v. Endicott Clay Products*, 252 Neb. 315, 319, 562 N.W.2d 332, 334 (1997). Now that the issue is squarely before this court, we hold that such reimbursement is not authorized. The Workers' Compensation Court's decision is accordingly affirmed on this issue.

### (b) Attorney Fees Assessed Against Vickers

Vickers next argues that the Workers' Compensation Court review panel erred in ordering it to pay $1,500 for Bryson's attorney fees incurred during SIF's unsuccessful application for review. Vickers argues alternatively either that the court had no authority to order it to pay fees or that any such fees should have been assessed against SIF rather than Vickers.

Neb. Rev. Stat. § 48-125 (Reissue 1993) provides:

> *If the employer* files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs *against the employer* for such review . . . .

(Emphasis supplied.) The Second Injury Fund is an employer for purposes of attorney fees awarded pursuant to § 48-125. *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991). Accordingly, we hold that the Workers' Compensation Court had statutory authority to impose attorney fees in this case. However, those fees should have been assessed against SIF, which filed the application for review. Compare *Pollard v. Wright's Tree Service, Inc.*, 212 Neb. 187, 322 N.W.2d 397 (1982) (if SIF files an unsuccessful appeal in appellate courts, attorney fees are taxed against it and not against employer per se). The compensation court review panel accordingly erred in assessing attorney fees against Vickers. The matter is therefore remanded with directions that the court amend its order to provide for assessment of such fees against SIF instead of against Vickers.

### VI. CONCLUSION

For the reasons set forth above, we affirm the Workers' Compensation Court on the issue of Second Injury Fund liability and on the issue of Vickers' demand for reimbursement by SIF. We reverse on the issue of attorney fees awarded against Vickers, and remand for entry of an order consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.