HERBERT CORDS, APPELLEE, V. CITY OF LINCOLN, APPELLANT.

545 N.W.2d 112

Filed March 29, 1996.   No. S-95-838.

William F. Austin, Lincoln City Attorney, and James D. Faimon for appellant.

Rollin R. Bailey, of Bailey, Polsky, Cope & Knapp, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Herbert Cords brought this action against the City of Lincoln (City) seeking workers' compensation benefits for an injury sustained to his lower back as a result of an accident which occurred on July 8, 1992. At trial, a single judge of the Nebraska Workers' Compensation Court held that Cords' claimed accident "[arose] out of and in the course of his employment" with the City, and that Cords experienced a 10-percent loss of earning power as a result of the injury. Therefore, the court ordered the City to pay Cords permanent partial disability at a rate of $51.39 per week for 300 weeks, along with medical expenses and vocational rehabilitation

benefits. The appeals panel of the Workers' Compensation Court affirmed the trial court's order. The City appeals.

Under the authority granted to us by Neb. Rev. Stat. § 24–1106 (Cum. Supp. 1994) to regulate the caseloads of the appellate courts of this state, we remove the appeal to this court. We conclude there was sufficient competent evidence to support the trial court's findings and the award granted. As a result, we affirm the appeals panel's decision affirming the trial court's order.

## FACTUAL BACKGROUND

Cords, age 60, began his employment with the City's parks and recreation department in 1961 and had held the position of assistant superintendent of parks since 1966. Cords' educational background includes high school and a few college courses. Prior to his employment with the City, Cords worked as a mechanic, farmed, drove a truck, and worked at an equipment company and a grocery store. As assistant superintendent of parks, Cords earned wages of $770.76 per week and reported only to the superintendent of parks, James Morgan, who in turn reported only to the mayor of Lincoln, Mike Johanns. Approximately 80 full–time employees were under Cords' supervision and direction. Cords' duties included overseeing the City's mechanical maintenance shop, carpentry maintenance shop, swimming pools, greenhouse, and four golf courses, along with seeing that orders were placed and fulfilled. In the performance of these duties, Cords would go to Lincoln's County–City Building approximately three to four times a week.

On July 7, 1992, Cords was told by his superior, Morgan, that due to a complaint against Cords, the City was offering him a chance to retire or he would be terminated. This ultimatum resulted from an alleged incident which involved a newspaper reporter. Cords asked Morgan whether he should contact the complaining party, retain a lawyer, or appeal to the mayor or personnel director regarding his job status. He was advised against contact with the complaining party but was informed that he was free to pursue whatever options he chose. Cords elected to contact the mayor's office and was able to schedule an appointment.

On July 8, 1992, Cords reported to work at approximately 7 a.m. and began performing some of his usual duties. At approximately 10:30 a.m., Cords went to the County–City Building to speak with the mayor and to speak with someone in the purchasing department about some grass seed he had ordered. Cords first attempted to inquire about the grass seed, but neither of the individuals he needed to speak with was there. He then went to the mayor's office and was advised that the mayor would follow the recommendation of Morgan. After speaking with the mayor, Cords went down to the first floor to speak with Ron Todd, an acquaintance in the personnel department. After speaking with Todd, Cords decided to go back upstairs to "talk to the Mayor one more time."

On his way to the mayor's office, Cords decided against revisiting the mayor. As a result, he started back down the stairs, planning to return to his office and to talk again to Morgan. As he was approximately four to five stairs from the bottom of the stairwell, Cords slipped, turned his ankle, and fell backward onto the stairs, injuring his lower back. After the fall, Cords went to the parks office to fill out an accident report, as is required after all accidents by City employees. He then attempted to see Morgan, who was out of the office. Cords then went to his own office and began returning phone calls, but began to hurt and decided to go home.

On July 9, 1992, while at home due to his injuries, Cords received a letter of termination of employment from Morgan. The letter, which was dated July 9, stated that Cords was suspended immediately pending discharge. The letter further stated that Cords had "ten working days to appeal this suspension prior to discharge" and that "at the end of the suspension period [he would] be terminated and may appeal the termination as provided in the Lincoln Municipal Code." On that date, Cords wrote a letter of resignation giving 2 weeks' notice and laid it on Morgan's desk.

As a result of his injury, Cords saw a family physician, an orthopedic surgeon, a physical therapist, and a neurologist. The orthopedic surgeon, Dr. Samuel Smith, gave Cords "a 2% partial permanent impairment for the body as a whole on the basis of his injury." At trial, Cords testified that he continued

to suffer from lower back pain and from numbness in the three smallest toes on his right foot. Cords further testified that since the accident, he must walk slowly because when he walks fast it hurts, that he can ride only 50 miles in a car before he has to get out and move around, that he had to buy a riding lawn mower in order to mow his yard, and that after he resigned he began cleaning apartments but quit those jobs because it hurt him to carry things.

At trial, a single judge of the Nebraska Workers' Compensation Court held that Cords' claimed accident "[arose] out of and in the course of his employment" with the City, and that Cords experienced a 10-percent loss of earning power as a result of the injury. Therefore, the court ordered the City to pay Cords permanent partial disability at a rate of $51.39 per week for 300 weeks, along with medical expenses and vocational rehabilitation benefits. The appeals panel of the Workers' Compensation Court affirmed. The City appeals.

## ASSIGNMENTS OF ERROR

The City assigns 10 errors, which allege in summary that there was insufficient evidence to support the Workers' Compensation Court's conclusions that Cords: (1) incurred an accident "arising out of and in the course of his employment," (2) was eligible for $51.39 per week for 300 weeks in permanent partial disability compensation due to a 10-percent loss of earning power, and (3) was eligible for vocational rehabilitation services.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hull v. Aetna Ins. Co., ante* p. 125, 541 N.W.2d 631 (1996); *Buckingham v. Creighton University,* 248 Neb. 821, 539 N.W.2d 646 (1995).

Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Scott v. Pepsi Cola Co., ante* p. 60, 541 N.W.2d 49 (1995). In testing the sufficiency of the evidence to support findings of fact, the evidence must be considered in the light most favorable to the successful party. *Morton v. Hunt Transp.*, 240 Neb. 63, 480 N.W.2d 217 (1992); *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

## ANALYSIS

### ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT

The City first alleges there was insufficient evidence to support the trial court's conclusion that Cords incurred an accident "arising out of and in the course of his . . . employment" as required by Neb. Rev. Stat. § 48–101 (Reissue 1993). More specifically, the City argues that Cords' appointment with the mayor at the County–City Building was outside the course of his employment, and therefore, the accident did not arise out of his employment.

Whether an accident arose "out of" and "in the course of" employment must be determined from the facts of each case. *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995). The onus of proving that the injury arose both "out of" and "in the course of" the employment rests upon the applicant. *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965); *Bartlett v. Eaton*, 123 Neb. 599, 243 N.W. 772 (1932).

"Arising out of" is a term which describes the accident and its origin, cause, and character, i.e., whether it resulted from risks arising within the scope or sphere of the employee's job. On the other hand, "in the course of" refers to the time, place, and circumstances surrounding the accident. *Cox v. Fagen Inc., ante* p. 677, 545 N.W.2d 80 (1996); *Johnson v. Holdrege Med. Clinic, ante* p. 77, 541 N.W.2d 399 (1996).

The test to determine whether an act or conduct of an employee which is not a direct performance of his work "arises out of" his employment is whether the act is reasonably incident thereto, or is so substantial a deviation as to constitute a break in the employment which creates a formidable independent

hazard. *Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992); *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987); *Schademann v. Casey*, 194 Neb. 149, 231 N.W.2d 116 (1975).

> "All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his work, are regarded as being within the scope or sphere of the employment."

*Schademann*, 194 Neb. at 155, 231 N.W.2d at 121.

The "in the course of" requirement demands that the injury be shown to have arisen within the time and space boundaries of employment and in the course of an activity whose purpose is related to employment. *Cox v. Fagen Inc., supra*; *Moore v. The Sisk Co.*, 216 Neb. 451, 343 N.W.2d 767 (1984).

In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. In the instant case, the trial judge found that Cords

> was still an employee on the date of his injury. He was "on the clock" when the accident occurred. While his normal job description may not have involved meetings with the Mayor or his staff regarding his employment status, there can be little doubt that continuation of his 26 year career was fundamentally within the concept of "course of employment" and the accident therefore "arose out of" that employment. There is no formula for determination of questions whether an accident arises out of and in the course of employment. Such adjudications must occur on the specific facts of each case. The evidence as a whole preponderates in favor of [Cords].

Section 48–185 precludes an appellate court's substitution of its view of the facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. *Aken*

*v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

It is uncontroverted that Cords was an employee of the City on July 8, 1992, when the injury occurred. At the hearing, Cords adduced the following evidence: Besides Morgan, the only person with a position superior to Cords' in the parks and recreation department was the mayor. In the performance of his duties, Cords would go to the County–City Building approximately three to four times a week. While Morgan never advised Cords to visit the mayor in regard to his termination, he did tell Cords that he was free to pursue whatever options he chose. Cords made an appointment to see the mayor. In the morning before visiting the mayor, Cords performed his regular duties. While at the County–City Building to visit the mayor, Cords attempted to inquire about some seed he had ordered, which was part of his regular duties. After the accident, Cords continued performing his duties, including filling out an accident form, attempting to talk to his superior, and returning phone calls.

Cords' discussion with the mayor about retaining him as an employee of the City after 26 years of exemplary service in a responsible managerial position is certainly a subject that is of beneficial interest to the City. See *McCall v. McCall Amusement, Inc.*, 748 S.W.2d 827 (Mo. App. 1988) (injury suffered by employee while performing act for mutual benefit of employer and employee is usually compensable and arises out of and in course of employment, even though advantage to employer is slight).

It is true that the meeting with the mayor was not a direct performance of Cords' work as assistant superintendent of parks. However, when considering the evidence adduced in the light most favorable to Cords, it was not clearly erroneous for the trial court to have found that such a meeting arose within the time and space boundaries of employment and in the course of an activity whose purpose was related to employment, and was not so substantial a deviation as to constitute a break in the employment which created a formidable independent hazard. See, *Cox v. Fagen Inc., ante* p. 677, 545 N.W.2d 80 (1996); *Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992).

Thus, we conclude the trial judge had sufficient competent evidence in the record to find that Cords incurred injuries to his lower back as a result of an accident "arising out of and in the course of his employment."

### PERMANENT PARTIAL DISABILITY COMPENSATION

The City next alleges there was insufficient evidence to support the trial court's conclusion that Cords was eligible for $51.39 per week for 300 weeks in permanent partial disability compensation due to a 10-percent loss of earning power.

A determination as to whether an injured worker has had a loss of earning power is a question of fact to be determined by the Workers' Compensation Court. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994). Neb. Rev. Stat. § 48-121(2) (Reissue 1993) states in pertinent part: "For disability partial in character . . . the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter."

"Earning power," as used in subsection (2) of § 48-121, is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he is engaged or for which he is fitted. *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980).

While expert witness testimony may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court does not need to depend on expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. See *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990).

The City did not adduce any evidence concerning Cords' injuries or earning power. In addition to the opinion of Dr. Smith that Cords suffered "a 2% partial permanent impairment," Cords personally testified that he continued to suffer from lower back pain and from numbness in the three smallest toes on his right foot. Cords further testified that since the accident, he must walk slowly because when he walks fast

it hurts, that he can ride only 50 miles in a car before he has to get out and move around, that he had to buy a riding lawn mower in order to mow his yard, and that after he resigned he began cleaning apartments but quit those jobs because it hurt him to carry things.

This testimony, in addition to Cords' age, Cords' limited work experience and education, the position he held, the wages he was earning, and the disability that he suffered, establishes that Cords is not employable for a position comparable to the position he held and that he suffered a 10-percent loss of earning capacity. As a result, we conclude that there was sufficient competent evidence in the record justifying the trial court's award of permanent partial disability at a rate of $51.39 per week for 300 weeks.

### VOCATIONAL REHABILITATION SERVICES

Finally, the City alleges there was insufficient evidence to support the trial court's conclusion that Cords was eligible for vocational rehabilitation services. Neb. Rev. Stat. § 48-162.01(3) (Reissue 1993) provides in part:

> An employee who has suffered an injury covered by the Nebraska Workers' Compensation Act shall be entitled to prompt medical and physical rehabilitation services. When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including job placement and retraining, as may be reasonably necessary to restore him or her to suitable employment.

A determination as to whether there is a reasonable probability that vocational rehabilitation services would reduce the amount of earning power lost by an injured worker is a question of fact to be determined by the Workers' Compensation Court. *McGowan v. Lockwood Corp., supra.*

As stated, Cords testified about the accident; about how he felt on the day of the trial, that more than 2 years 3 months after the accident he was still suffering from physical pain and difficulty; about his numerous visits to medical doctors seeking relief; and about how he had tried to obtain new jobs, but could

not do so due to his injury. The City offered no contradictory evidence. As a result, we conclude that there was sufficient competent evidence from which the trial judge could conclude that Cords was eligible for vocational rehabilitation services.

## CONCLUSION

We conclude the trial judge had sufficient competent evidence in the record to find that Cords incurred an accident "arising out of and in the course of his . . . employment" and was eligible for vocational rehabilitation services, as well as $51.39 per week for 300 weeks in permanent partial disability compensation due to a 10-percent loss of earning power. Therefore, the Workers' Compensation Court review panel's decision affirming the trial judge's order is affirmed.

AFFIRMED.