KHANKEO XAYASENG, APPELLANT,
V. CHIEF INDUSTRIES, INC., APPELLEE.
586 N.W.2d 472

Filed November 17, 1998.   No. A-98-247.

Todd Bennett, of Rod Rehm, P.C., for appellant.

Timothy M. Welsh, of Berens & Tate, P.C., for appellee.

HANNON and MUES, Judges, and NORTON, District Judge, Retired.

HANNON, Judge.

This is a workers' compensation case brought by Khankeo Xayaseng against his former employer, Chief Industries, Inc. (Chief), to recover for injuries he received while in its employ. Xayaseng was injured while working as a welder, and the issue before the Workers' Compensation Court was whether he was permanently and totally disabled as a result of the injuries. The trial court found the injuries to his thumb and legs caused him to be permanently and totally disabled under Neb. Rev. Stat. § 48-121 (Reissue 1993). The workers' compensation review panel found the trial judge erred in considering loss of the physical function of the thumb in determining whether Xayaseng was permanently and totally disabled. The review panel remanded the matter to the trial judge to determine the disability Xayaseng had suffered from the injuries to his legs without regard to the injury to his thumb. We conclude that Xayaseng suffered a two-member injury under § 48-121(3) by the injuries to his legs and was, therefore, entitled to permanent and total disability determined in accordance with the facts, including injuries to parts of the body that are not members for purposes

of the two-member injury provision. Further, we cannot find that the trial judge was clearly wrong in his determination of the extent of injuries Xayaseng incurred. Accordingly, we reverse the order of the review panel and remand the cause with directions to reinstate the award of the trial judge.

## SUMMARY OF EVIDENCE

Xayaseng worked as a welder for Chief. Xayaseng's employment required bending, kneeling, crawling, standing, and climbing ladders. On June 13, 1995, while in the scope of his employment, a steel beam weighing approximately 1,000 pounds fell and landed on Xayaseng's thighs and right thumb. As a result of the accident, Xayaseng was taken to the hospital and treated for bruised and swollen thighs and a sprained right thumb. Since the injury, Xayaseng has seen numerous doctors.

Xayaseng's family physician released Xayaseng to return to work on June 26, 1995. Xayaseng then saw Dr. Gordon Hrnicek, an internist, on June 29. Hrnicek noted broken skin on the right thigh and bruising on the left thigh, limited motion in the thighs, and an injury to the thumb. Hrnicek put Xayaseng on disability and ordered physical therapy. Hrnicek saw Xayaseng again on July 13 and 21. He noted Xayaseng was improving, but continued to keep Xayaseng on disability. Xayaseng visited Hrnicek on July 18 and complained of weakness and pain in his thumb. Hrnicek, however, cleared Xayaseng to return to work on August 1.

On August 8, 1995, Xayaseng returned to Hrnicek complaining of pain, tenderness, and swelling in his legs and thumb. Hrnicek treated Xayaseng's thumb with medication through the month of August. Xayaseng was ordered to perform only light tasks.

Xayaseng visited Dr. Robert Urban, an orthopedic surgeon, on September 15, 1995. Urban opined that Xayaseng sustained a 20-percent impairment to the thumb and a 10-percent impairment to each leg as a result of the accident. Urban also stated: "It is my opinion within a reasonable degree of medical certainty, that the injury to his thighs also was the injury which caused his chondromalacia [soft cartilage tissue in the knee] and the causal relationship is direct between the two."

Xayaseng next visited Hrnicek's partner, Dr. R. Allison, on September 26, 1995. Allison found marks across Xayaseng's quadriceps (thighs) secondary to the trauma of the beam landing on his legs. Allison prescribed that Xayaseng rest his muscles and continue physical therapy. Allison too suggested only light-duty work.

In October 1995, Xayaseng saw two new doctors, Dr. David Swift, a rheumatologist, and Dr. Balachandran Wariyar, a neurologist. Swift diagnosed Xayaseng with traumatic leg and thumb injury from the accident resulting in continued weakness and pain. Wariyar stated that it would be approximately 1 year after the accident before Xayaseng reached maximum medical improvement.

In November 1995, Hrnicek again examined Xayaseng and cleared Xayaseng to return to work on November 13. Hrnicek treated Xayaseng again on November 22, and again cleared him to return to work.

Xayaseng felt he was in too much pain to return to work. He asked Chief to place him on light duty, but Chief refused. Xayaseng failed to come in to work, and in early December 1995, Chief terminated Xayaseng's employment.

Xayaseng still complained of leg and thumb problems, and on January 6, 1996, Hrnicek filled out a workers' compensation medical report form for Xayaseng. In the report, Hrnicek stated that Xayaseng reached his maximum medical treatment on December 1, 1995, that no future medical treatment was necessary, and that Xayaseng had no limitations whatsoever.

On May 3, 1996, Grand Island Physical Therapy, P.C., performed a functional capacity evaluation. The therapist found Xayaseng improperly represented his present physical capabilities, which was based on Xayaseng's inconsistencies while he was being tested. The therapist was unable to draw significant conclusions.

Next, Xayaseng visited Dr. Kip Burkman on June 25, 1996. Burkman diagnosed Xayaseng with a 5-percent impairment in each leg and an 11-percent right upper body extremity impairment. Finally, Xayaseng visited Dr. D.M. Gammel, a fellow of the American Academy of Evaluating Physicians. Gammel diagnosed Xayaseng with a 10-percent impairment to his right

upper extremity and a 5-percent impairment to each leg caused by his injuries on June 13, 1995.

Two vocational specialists examined Xayaseng on April 12 and July 9, 1996. Both specialists determined that due to Xayaseng's injury, he could no longer perform manual labor, and that because of his limited education and English skills, Xayaseng would "not be employable."

After an April 21, 1997, hearing, a workers' compensation judge reviewed the evidence and found that Xayaseng cannot read or write English; that he has substantial loss of use of his hand because of the injury to his thumb; that he has substantial problems with both legs; that his only real training is as a welder; that a welder must use his or her dominant hand and must stand, squat, kneel, crawl, and climb; that Xayaseng can do none of these; that being a welder is an occupation which it is certain he can no longer do; and that he is permanently and totally disabled. The court made several other findings concerning the amount of the award to which Xayaseng is entitled, but since these findings are dependent upon the correctness of the disability finding and are not contested, we need not summarize them.

Chief applied for review by a three-judge panel on the grounds the trial judge erred in nine different respects, which the review panel summarized as claiming the trial judge erred in finding (1) that Xayaseng's thumb was enlarged at the metacarpophalangeal joint; (2) that Xayaseng has weakness in his right hand; and (3) that Xayaseng is permanently and totally disabled, particularly in view of findings that Xayaseng had substantial loss of use of his right hand because of the injury to his thumb.

After stating some of the evidence and reviewing *Runyan v. Lockwood Graders, Inc.*, 176 Neb. 676, 127 N.W.2d 186 (1964), the review panel concluded that the trial judge had considered the loss of function of Xayaseng's hand due to the thumb injury in determining that he suffered permanent and total disability under § 48-121(3). The court concluded this was improper under the *Runyan* case. In its opinion, the review panel stated, "The Runyan case makes it clear that the loss of fingers and toes is not to be considered in determining perma-

nent total disability." The review panel remanded the cause to the trial judge with directions to determine whether or not the alleged injuries to Xayaseng's legs produced permanent and total disability without regard to the thumb injury. The review panel further ordered the lower court to provide a reasoned decision based on findings with respect to the present condition of Xayaseng's legs, the cause of that condition, and the expert opinion upon which he relies in making his findings. The review panel affirmed the award except for the finding that Xayaseng has been permanently and totally disabled. Xayaseng now appeals to this court.

## ASSIGNMENTS OF ERROR

Xayaseng argues the review panel erred by holding the trial court incorrectly considered Xayaseng's injury to his thumb in determining the degree of his disability and by failing to affirm the trial judge's determination that Xayaseng is permanently and totally disabled.

## SCOPE OF REVIEW

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. However, the findings of fact made by a workers' compensation judge on original hearing have the effect of a verdict and are not to be disturbed on appeal unless clearly wrong. *Johnson v. Ford New Holland*, 254 Neb. 182, 575 N.W.2d 392 (1998).

## ANALYSIS

The review panel based its order reversing the trial judge's findings upon *Runyan, supra*. We will, therefore, start with a review of that case. In *Runyan*, the plaintiff lost the middle finger of his right hand and the middle and ring fingers of his left hand. The plaintiff's other five fingers were injured to the point where the medical evidence would support a finding that he lost the use of all eight fingers, but not his thumbs, and that he was incapacitated from performing any work similar to that which he performed before the accident.

The court recognized that disability of a lesser part of the body is injurious to the function of the greater part, such as the loss of a finger is injurious to the function of the hand.

Nevertheless, the court held that the plaintiff's recovery was limited "to the schedule [compensation for] loss of . . . fingers as provided in subdivision (3) of section 48-121, R. R. S. 1943." *Runyan v. Lockwood Graders, Inc.*, 176 Neb. 676, 682, 127 N.W.2d 186, 190 (1964). The *Runyan* court cited several cases stating:

> Where an employee has suffered a schedule injury to some particular member or members and some unusual and extraordinary condition develops therefrom as a result thereof, which condition affects some other member or the body itself, an increased award is proper and should be made to cover such additional disability.

176 Neb. at 679, 127 N.W.2d at 189. The *Runyan* court determined that no extraordinary condition developed from that injury.

The plaintiff in *Runyan* sought compensation under that part of subdivision (3) of § 48-121, which provided and still provides: "In all other cases involving a loss or loss of use of both hands, both arms, both feet, both legs, both eyes, or hearing in both ears, or of any two thereof, total and permanent disability shall be determined in accordance with the facts."

The *Runyan* court rejected the notion that loss of a finger is injurious to the function of the hand or the body because workers' compensation law saw fit to make an arbitrary distinction between injuries to fingers and injuries to the hand and the arm. It further pointed out that total loss of a finger is not a member within the two-member injury provision, quoted above. Consequently, "benefits for the loss of a finger are limited to the schedule loss, unless the rule cited as to unusual and extraordinary injury to some other member, or the body as a whole, has application." *Runyan*, 176 Neb. at 679-80, 127 N.W.2d at 189. The *Runyan* court held the plaintiff's benefits were limited to the scheduled compensation for the loss of eight fingers.

*Runyan* is distinct from the case at hand in that it involved only injuries to fingers on both hands, and no other injury to the body. Fingers are not listed in the two-member injury section of subdivision (3), and the *Runyan* court refused to consider an injury to fingers as an injury to the hand absent some extraordinary injury to the hand through the fingers. Xayaseng's condi-

tion is different in that he clearly has injury to two members, that is, his legs.

The case of *Krijan v. Mainelli Constr. Co.*, 216 Neb. 186, 342 N.W.2d 662 (1984), is analogous to the case at hand. In *Krijan,* the plaintiff had injured his right arm and his right leg in a fall, and he had a preexisting permanent partial disability to his left hand. He sought total permanent disability, but a rehearing panel awarded an 11-percent permanent partial disability of his right arm and a 13-percent permanent partial disability to his right leg. The Nebraska Supreme Court reversed the rehearing panel's decision and held as a matter of law that the worker was permanently and totally disabled. In so doing, that court quoted extensively from subdivision (3) of § 48-121. It then stated that since the plaintiff had permanent partial loss of the use of one arm and one leg as a result of the accident, the issue was whether the plaintiff was in fact disabled as a result of these injuries. The *Krijan* court then stated:

> For workmen's compensation purposes total disability does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do. [Citation omitted.] Total and permanent disability contemplates the inability of the workman to perform any work for which he has the experience or capacity to perform.

216 Neb. at 189, 342 N.W.2d at 664. See, also, *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992).

The *Krijan* court then reviewed the facts concerning the plaintiff's inability to work at his usual occupation of carpentry, foreign birth, eighth grade education, work history, physical limitations, and various functions he could not perform, such as heavy lifting, squatting, and prolonged standing. A rehabilitation consultant had opined that the plaintiff might be able to work as a security guard. The court concluded the plaintiff was totally disabled.

In the case at hand, the trial judge did essentially the same analysis as the *Krijan* court except he specifically considered

the injuries to Xayaseng's thumb and the resulting weakness of his right hand. The review panel concluded that under *Runyan v. Lockwood Graders, Inc.*, 176 Neb. 676, 127 N.W.2d 186 (1964), this was an error. We do not agree. The trial judge specifically found Xayaseng suffered an injury to both legs, and the evidence clearly supports this finding. We understand subdivision (3) of § 48-121 to mean that if a worker has a two-member injury, compensation shall be determined by the facts, and the existing or concurrent injury to another part of the body is one of these facts, even if that injury is not to a member as defined in that same subdivision.

■ Next, Chief argues even if the court properly considered the injuries to the legs, Xayaseng's proof does not support Chief's liability for any alleged disability, because Xayaseng failed to prove other evidence of any physical limitations. Chief contends none of the medical experts were willing to testify to the fact that Xayaseng's injuries prevented him from working nor would they put limits on his abilities. Further, Chief argues the trial judge erred in his determination of injury to Xayaseng's thumb by examining it. Chief also cites *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981), arguing that the necessary expert testimony is missing in this case. *Mack* states:

> "Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries."

209 Neb. at 370, 307 N.W.2d at 816.

■ The Nebraska Supreme Court in *Hohnstein v. W.C. Frank*, 237 Neb. 974, 980, 468 N.W.2d 597, 602 (1991), appears to support Chief's argument by stating: "It is well established that 'unless the character of an injury is plainly apparent, an injury is a subjective condition, and an expert opinion is required to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury. [Citations omitted.]'" In this case, Xayaseng presented

expert opinion to establish causation and the extent of the injuries. Dr. Urban opined that Xayaseng sustained a 20-percent impairment to the thumb and a 10-percent impairment to each leg as a result of the accident. Dr. Swift diagnosed Xayaseng with traumatic leg and thumb injury from the accident resulting in continued weakness and pain. Dr. Gammel diagnosed Xayaseng with a 10-percent impairment to his right upper extremity and a 5-percent impairment to each leg caused by his injuries on June 13, 1995. Two vocational specialists, Carol Reddy and Gail Leonhardt, both opined Xayaseng was not employable after the accident.

In addition to expert opinion, the judge, in his determination of the extent of the injuries, cites Xayaseng's testimony that he had diminished grip strength. The issue is whether the judge may consider Xayaseng's testimony about the extent of his injury to his thumb. The Nebraska Supreme Court addressed this issue in *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996).

In *Cords*, the plaintiff was a city employee who injured his lower back and ankle while on the job. Cords presented an expert medical witness who opined that Cords suffered a 2-percent partial impairment. Cords then personally testified that he continued to suffer from lower back pain and from numbness in the three smallest toes on his right foot. The city argued that Cords' testimony was insufficient. The court ruled: "While expert witness testimony may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court does not need to depend on expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant." *Cords*, 249 Neb. at 756, 545 N.W.2d at 118.

Similarly in this case, expert medical testimony from Urban, Swift, and Gammel established causation between the injury to Xayaseng's thumb and the accident. Expert witnesses are not required to establish the degree of disability, and the judge may apply the testimony of Xayaseng to determine the extent of the injuries.

The judge also personally examined Xayaseng's thumb and noticed swelling in the "MP" joint of the thumb. No objection was preserved at the time of the judge's observation. Chief

argues the judge does not possess the necessary scientific knowledge to diagnose injuries such as those alleged by Xayaseng. However, the same argument applies to the judge as to Xayaseng. Judges, as triers of fact, regularly view injuries to observe objective appearance. Expert witnesses are not required to establish degree of disability once causation has been developed. The trial judge, as the trier of fact, is the sole judge of the witnesses' credibility and may apply testimony he or she believes to be credible. This court is unable to say the judge was clearly wrong in this finding of the extent of the injury. Therefore, we reverse the order of the review panel and remand the cause with directions to reinstate the award of the trial judge.

REVERSED AND REMANDED WITH DIRECTIONS.