JOHN W. BROUILETTE, APPELLANT, V. DBV ENTERPRISES, INC., AND THE TRAVELERS INSURANCE CO., APPELLEES.

619 N.W. 2d 482

Filed November 21, 2000.   No. A-00-184.

James F. Fenlon, P.C., for appellant.

Mark J. Peterson and Joseph M. Colaiano, of Koley Jessen, P.C., L.L.C., for appellee DBV Enterprises, Inc.

Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee The Travelers Insurance Co.

HANNON, INBODY, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

This is an appeal from an order of affirmance on review of the Nebraska Workers' Compensation Court awarding benefits to John W. Brouilette. Brouilette specifically appeals from the compensation court's determination that Brouilette's employer, DBV Enterprises, Inc. (DBV), was not insured for workers' compensation purposes by The Travelers Insurance Co. (Travelers) as of January 9, 1997, when Brouilette was injured. For the reasons stated below, we affirm.

## BACKGROUND

Brouilette began working exclusively for DBV in late 1996 performing construction and maintenance; specifically, Brouilette began constructing an office in The Aquarium, a restaurant in Omaha, Nebraska. Brouilette had previously worked for Thousand Adventures, Inc. (TAI), another corporation owned by the same family that owned DBV. On January 9, 1997, Brouilette was maneuvering a heavy section of wall into place at the restaurant, which section became unbalanced and fell, injuring Brouilette's right shoulder. Brouilette notified DBV of his injury, sought medical treatment, and was diagnosed with a "torn right supra spinatus tendon and injury to the clavicle and scapula."

DBV was insured for workers' compensation coverage for the periods of December 19, 1994, to December 19, 1995, and again

from December 19, 1995, to December 19, 1996, by The Aetna Casualty and Surety Company. Some time after the original policy was issued, Travelers purchased the assets and assumed the liabilities of Aetna. Travelers sent an invoice to DBV on November 25, 1996, for the renewal policy premium due, indicating a minimum amount due of $1,830.04 to ensure continued coverage effective December 19, 1996. A second invoice, or followup bill, was mailed to DBV on or about December 25, 1996, reflecting a payment due date of January 20, 1997, with a minimum amount due of $2,475.16, notifying DBV that Travelers had not yet received the premium and advising DBV that failure to pay the minimum due would result in an assumption by Travelers that DBV had rejected Travelers' offer to renew the coverage that had expired on December 19, 1996.

Henry Ziber, the regional commercial lines controller for Travelers, testified by deposition that Travelers made the decision on October 17, 1996, to renew the policy and still intended, at the time of the December 1996 statement, to renew the policy if payment was received by January 20, 1997. As of January 20, neither the full premium nor the minimum amount due had been received by Travelers. Subsequently, Travelers sent an "agent's activity list" to the insurance agent for DBV, stating that coverage under the policy was "flat" canceled effective December 19, 1996, due to nonpayment by the insured. Travelers issued a final accounting statement to DBV on February 9, 1997, indicating that the workers' compensation policy in question was canceled.

On February 11, 1997, Travelers received a payment from DBV in the amount of $1,987.50, which exceeded the amount billed on the November 1996 invoice, but was less than the minimum amount due shown on the December 1996 statement. Travelers retained $800 due for an audit of DBV's 1995 insurance policy and refunded the balance of $1,187.50 to DBV. On February 12, 1997, Travelers filed a proof of coverage cancellation notice in the Nebraska Workers' Compensation Court, stating that DBV's policy was "cancelled flat" for "non-payment" of premium.

Brouilette filed his workers' compensation claim against DBV and Travelers on August 24, 1998. In Travelers' answer, filed October 13, 1998, it alleged that DBV's workers' compen-

sation coverage was effectively canceled prior to Brouilette's injury of January 9, 1997. In a pretrial order filed April 23, 1999, the parties stipulated that on January 9, 1997, Brouilette was employed and suffered personal injury resulting from an accident arising out of and in the course of his employment. The pretrial order limited the issues for trial to consideration of whether Brouilette was employed by DBV (as opposed to TAI) on January 9, 1997, whether DBV was insured for workers' compensation by Travelers on that date, the extent of Brouilette's permanent impairment, Brouilette's entitlement to statutory penalties and attorney fees, and whether either or both defendants were liable for Brouilette's medical and hospital expenses.

In its award filed June 17, 1999, the trial court found that Brouilette was an employee of DBV when he was injured and had a 9-percent impairment to his right arm. The court further found that DBV was not insured for workers' compensation coverage by Travelers on January 9, 1997, reasoning that this was not a circumstance in which Travelers had made a determination to cancel coverage within the contract period, nor was it a circumstance in which Travelers intended to nonrenew. The court specifically found that Travelers intended to renew the policy, only requiring DBV to pay the premium, further stating that nonpayment of the premium simply resulted in a lapse of the policy. The court concluded by stating that it was not aware of any statute obliging an insurer to continue coverage for an insured which failed and refused to pay the premium to which the insurer was entitled for the coverage it provided. Finally, the court found that DBV was liable for Brouilette's medical expenses because it was his employer at the time he suffered injuries arising out of the course and scope of his employment, further finding that Brouilette was not entitled to statutory penalties and attorney fees.

Brouilette filed an application for review on June 30, 1999, with respect to the trial court's findings that DBV was not insured by Travelers on January 9, 1997, and that Travelers was not liable to pay disability benefits and medical expenses. In its order of affirmance, filed January 12, 2000, the review panel agreed with the trial court that the case did not present a situa-

tion in which the insurer determined to cancel or nonrenew the policy, but, rather, the policy lapsed due to nonpayment of the premiums due. The review panel agreed with Travelers' position that Neb. Rev. Stat. § 48-144.03 (Reissue 1998) was not applicable and affirmed the award previously entered by the trial court. In a separate concurrence, one judge of the review panel noted specifically that § 48-144.03(1)(a) did not apply because this was not a cancellation of the policy within the contract period and that § 48-144.03(2), dealing with situations where the insurer intends to nonrenew, was not applicable because in the present case, Travelers intended to renew the insurance policy. The concurring review panel judge concluded that the Nebraska Supreme Court's ruling in *Struve Enter. v. Travelers Ins. Co.*, 243 Neb. 516, 500 N.W.2d 580 (1993), was controlling rather than § 48-144.03 because the present case presented a situation wherein the insurance policy had expired naturally on December 19, 1996, when DBV did not purchase a new policy. Subsequently, Brouilette perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Brouilette asserts that the Workers' Compensation Court erred in finding that Travelers was not the workers' compensation insurance carrier for DBV on January 9, 1997, and was not liable to pay Brouilette for the 9-percent impairment of his right arm or to pay medical, hospital, and reimbursement expenses set forth in the award.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review

panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Id.*

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Austin v. Scharp*, 258 Neb. 410, 604 N.W.2d 807 (1999).

### DISCUSSION

Brouilette asserts that the Workers' Compensation Court erred in finding that Travelers was not the workers' compensation insurance carrier for DBV on January 9, 1997, and thus not liable for workers' compensation benefits to Brouilette. Both the trial court and the review panel agreed that the present case did not present a situation in which Travelers determined to cancel or nonrenew DBV's workers' compensation policy, but, rather, the policy lapsed due to DBV's nonpayment of the premium. Brouilette and DBV both assert that the result in this case should be governed by § 48-144.03, essentially asserting that DBV's workers' compensation policy did not lapse on December 19, 1996, but that coverage instead extended for a statutory period dating from February 12, 1997, when Travelers filed the proof of coverage cancellation notice in the compensation court. Section 48-144.03 provides in relevant part:

> (1)(a) If an insurer intends to cancel a contract or policy of insurance issued by the insurer under the Nebraska Workers' Compensation Act within the contract or policy period, the insurer shall give notice to such effect to the Nebraska Workers' Compensation Court and to the employer, fixing the date on which it is proposed that such cancellation be effective. Such notices shall contain a brief statement of the insurer's reasons for cancellation and shall be given to the compensation court and the employer as provided in subsection (3) of this section. No such cancellation shall be effective until thirty days after the giving of such notices, except that such cancellation may be effective ten days after the giving of such notices if such cancellation is based on (i) nonpayment of premium . . . . If the employer has secured insurance with another insurer

which would cause double coverage, such cancellation shall be made effective as of the effective date of such other insurance.

(b) In any case when the employer gives notice to the insurer that he or she intends to cancel a contract or policy of insurance issued by the insurer under the Nebraska Workers' Compensation Act within the contract or policy period, the insurer shall immediately give notice to the Nebraska Workers' Compensation Court that such contract or policy is being canceled by the employer and the date on which it is proposed that such cancellation be effective. Such notice shall be given to the compensation court as provided in subsection (3) of this section. No such cancellation shall be effective until ten days after the giving of such notice. If the employer has secured insurance with another insurer which would cause double coverage, such cancellation shall be made effective as of the effective date of such other insurance.

(2) If an insurer intends to nonrenew a contract or policy of insurance issued under the Nebraska Workers' Compensation Act, the insurer shall give notice to such effect to the Nebraska Workers' Compensation Court and to the employer. Such notices shall contain a brief statement of the insurer's reasons for nonrenewal and shall be given to the compensation court and the employer as provided in subsection (3) of this section. No such nonrenewal shall be effective until thirty days after the giving of such notices. This subsection shall not apply to contracts or policies of insurance issued pursuant to section 48-146.01.

Section 48-144.03(1)(a), which by its own terms contemplates cancellation of a contract or policy of insurance within the contract or policy period, is not applicable because Travelers did not cancel the policy within the policy period, namely, between December 19, 1995, and December 19, 1996. Both Brouilette and DBV argue that § 48-144.03(2) is applicable in this case, and therefore, since Travelers did not provide notice of its intent to nonrenew until February 9, 1997, when it issued a final accounting statement to DBV and February 12 when it filed a proof of coverage cancellation notice in the compensa-

tion court, coverage existed for Brouilette's January 9, 1997, accident. Travelers argues that it did not *intend to nonrenew*, but, rather, that it offered to renew, which offer was rejected by virtue of DBV's failure to pay the premium by January 20, 1997.

Travelers directs us to *Struve Enter. v. Travelers Ins. Co.*, 243 Neb. 516, 500 N.W.2d 580 (1993), the case cited by the concurring review panel judge. Struve received a notice from Travelers stating that the policy at issue was about to expire and that the premium payment had to be received by a certain date in order to continue Struve's workers' compensation coverage. Struve made no payment to Travelers, and Travelers sent no further notices or reminders. The court found that Struve's failure to pay the renewal premium when a workers' compensation policy was reissued constituted a lapse rather than a cancellation of the policy. The court reasoned that the continuance of an insurer's obligation is conditional upon the payment of premiums, so that no recovery can be had upon a lapsed policy, the contractual relation between the parties having ceased. The court further reasoned that the burden is on an insured to keep a policy in force by the payment of premiums rather than on the insurer to exert every effort to prevent the insured from allowing a policy to lapse through a failure to make premium payments.

In *Struve*, the court also found that Travelers was not required to provide contractual or statutory notice of noncoverage to Struve. The Nebraska Workers' Compensation Act did not have a separate section dealing with nonrenewal of a policy until July 16, 1994, when the aforementioned provision was added to § 48-144.03. The relevant statute before the court in *Struve* was Neb. Rev. Stat. § 44-379 (Reissue 1988), applicable to workers' compensation policies at that time, which then provided in relevant part that "the insurer shall give the insured sixty days' written notice prior to cancellation or nonrenewal of such policy, except that the insurer may cancel upon ten days' written notice in the event of nonpayment of premium. Such notice shall state the reason for cancellation or nonrenewal."

On appeal, the Nebraska Supreme Court considered whether § 44-379 required Travelers to provide Struve with written notice of cancellation or nonrenewal in order to effectively terminate coverage under the workers' compensation policy, which

ran from July 1, 1987, to July 1, 1988, in spite of Struve's failure to pay the premiums necessary to renew that policy for a period of coverage beyond July 1, 1988. The Nebraska Supreme Court concluded that the provision applied to a cancellation by the unilateral action of the insurer before the end of the policy term and did not apply to an automatic termination by expiration of the policy period.

The Nebraska Supreme Court applied similar reasoning with regard to an automobile liability policy in *Sampson v. State Farm Mut. Ins. Co.*, 205 Neb. 164, 286 N.W.2d 746 (1980), wherein the court construed Neb. Rev. Stat. § 44-516 (1943), which required 10 days' notice of cancellation for nonpayment of automobile insurance premiums, as being inapplicable to a termination of the policy through expiration of the policy period. In *Sampson*, the court also found Neb. Rev. Stat. § 44-517 (1943) inapplicable, which provided that no insurer shall refuse to renew an automobile liability policy unless it gives 20 days' advance notice of its intention not to renew, and by the terms in § 44-517, it does not apply if the insurer has manifested its willingness to renew or in case of nonpayment of premium.

Brouilette and DBV argue that the court's ruling in *Struve* has no binding effect on the application or interpretation of the current notice provisions in § 48-144.03. Brouilette and DBV both note a distinction between the statute construed in *Struve* and § 48-144.03 in that neither § 44-379 nor its subsequent amendments required that notice be given to the workers' compensation court.

Travelers asserts that having elected to extend an offer of renewal of coverage to DBV, Travelers was under no obligation to provide notice to the compensation court. We agree. Unlike § 48-144.03(1), which addresses intent to cancel by either an insurer or an employer as well as an insurer's cancellation due to an employer's nonpayment of premium, § 48-144.03(2) notably, on its face, applies only to an insurer's intent to nonrenew a policy and does not address either an employer's intent to not renew a policy for an additional term or nonrenewal by an employer through lapse at the end of a policy period due to the employer's nonpayment of a renewal premium. The notice

requirements of § 48-144.03(2) would apply had Travelers elected not to renew DBV's workers' compensation coverage. However, Travelers did intend to renew the policy for an additional period, making the decision to renew on October 17, 1996, as testified to by Ziber. Once Travelers manifested its intent by extending not just one but two offers to DBV, Travelers was under no obligation to provide notice to the compensation court or to maintain DBV's policy in force beyond the expiration of the renewal offer in hopes that DBV would pay the renewal premium. On February 12, 1997, Travelers did indeed notify the court of the policy lapse as of December 19, 1996. This notification, however, was not required by § 48-144.03, and the fact that Travelers subsequently provided notification to the court does not alter the expiration date of the policy in question.

Because of the similarity in statutes and factual scenarios, we find that the rationale and holding in the *Struve* decision are applicable to this case. Travelers' obligation to provide workers' compensation coverage to DBV was conditional upon DBV's payment of premiums. The burden was on DBV, as the insured party, to maintain a policy in force by the payment of premiums rather than on Travelers to exert every effort to prevent DBV from allowing the policy to lapse through a failure to make premium payments. We find that the factual situation presented by the present case, wherein DBV's policy of workers' compensation expired on December 19, 1996, at the end of the policy period due to DBV's nonpayment of the "renewal" premium following Travelers' offer to renew, does not fall under the provisions of § 48-144.03. Accordingly, we affirm the finding of the compensation court that Travelers was not the workers' compensation insurance carrier for DBV on January 9, 1997, and thus not liable for workers' compensation benefits to Brouilette.

Finally, we note that Brouilette has requested an attorney fee and interest in this court as per Neb. Rev. Stat. § 48-125 (Supp. 1999). Because we affirm the compensation court's decision and hold that Travelers is not liable to Brouilette for workers' compensation benefits, there exists no increase in Brouilette's overall award. Therefore, Brouilette is not entitled to an award of attorney fees by this court.

## CONCLUSION

We find, on the facts of the present case, that the reasoning of *Struve Enter. v. Travelers Ins. Co.*, 243 Neb. 516, 500 N.W.2d 580 (1993), is applicable and that the notice provisions of § 48-144.03 are inapplicable. Accordingly, we affirm the finding of the compensation court that Travelers was not the workers' compensation insurance carrier for DBV on January 9, 1997, and thus not liable for workers' compensation benefits to Brouilette.

AFFIRMED.