JOSE HARO, APPELLEE, V. BEEF AMERICA, APPELLANT.

622 N.W. 2d 170

Filed February 13, 2001.   No. A-00-683.

Paul M. Smith and Joseph E. Andres for appellant.

Todd Bennett, of Rehm & Bennett, for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Beef America appeals from an order entered by a review panel of the Nebraska Workers' Compensation Court affirming an award of a single judge of the court granting compensation for injury caused to Jose Haro by a work-related accident. Beef America challenges the court's findings regarding temporary total disability and loss of earning capacity. Because we find sufficient evidence in the record to support the court's findings, we affirm.

## II. BACKGROUND

On December 22, 1998, Haro filed a petition in the Nebraska Workers' Compensation Court alleging that he sustained a compensable injury in approximately December 1995. Specifically, Haro alleged injuries to his neck, back, and arms from lifting activities in the course of his employment with Beef America. Haro prayed for temporary disability benefits, permanent disability benefits, payment of medical expenses, vocational rehabilitation, waiting time penalties, attorney fees, and interest.

The record indicates that Haro sought medical treatment on November 22, 1995. The record further indicates that Haro's last date of employment with Beef America was November 24. An MRI was performed on Haro on November 29.

The record does not contain any medical documentation concerning Haro or his injury between December 1995 and December 4, 1996, when Haro was seen by Dr. James Froggatt. Dr. Froggatt reviewed the MRI results from November 1995 and recommended a surgical procedure. Dr. Froggatt performed a diskectomy and fusion operation on December 10, 1996.

Dr. Froggatt's records indicate his opinion that Haro's "cervical injury is aggravated by his work and activities at Beef America on or about November 17, 1995." Dr. Froggatt assigned Haro a 7-percent body as a whole permanent impairment rating.

Dr. Froggatt recommended certain permanent work restrictions: Haro's lifting was not to exceed 30 pounds continuously and he was not to "work at or above the shoulder level."

Another physician, Dr. Michael O'Neil, expressed his opinion "with reasonable medical certainty that Mr. Haro's work at Beef America aggravated a pre-existing degenerative cervical disc disease . . . as well as pre-existing congenital narrowing of the mid-cervical spine." Dr. O'Neil opined that Haro was asymptomatic prior to November 1995. Dr. O'Neil assigned Haro a 9-percent body as a whole permanent impairment rating. Dr. O'Neil recommended permanent work restrictions, including avoiding repetitive work which requires rapid movement of Haro's head and neck in an upper or side-to-side direction.

The court appointed a vocational rehabilitation counselor to conduct a loss of earning power evaluation. The counselor indicated that Haro's average weekly wage at the time of the injury was $260. The counselor then evaluated Haro's impairment ratings from Drs. Froggatt and O'Neil, Haro's loss of access to employment markets for skilled and unskilled labor as a result of the restrictions recommended by each doctor, and Haro's loss of future earning capacity under each doctor's findings. The counselor then concluded that based on a preinjury average weekly wage of $260, Haro suffered a 37.7-percent overall loss of earning power under Dr. Froggatt's findings and a 5-percent overall loss of earning power under Dr. O'Neil's findings.

On November 24, 1999, the compensation court entered an award granting Haro compensation benefits. The court found that Haro suffered a compensable injury on or about November 17, 1995. The court found that Haro was temporarily totally disabled from November 25, 1995, the day after his last date of employment with Beef America, through December 10, 1997, the date Haro reached maximum medical improvement according to Dr. Froggatt. The court found that Haro suffered a permanent loss of earning power. The court accepted Dr. Froggatt's opinions over those of Dr. O'Neil and concluded that Haro's permanent loss of earning power is 40 percent. The court recognized that 40 percent is "slightly in excess" of the vocational rehabilitation counselor's opinion based on Dr. Froggatt's findings, but justified the increase to 40 percent by noting that the

counselor had used the wrong preinjury average weekly wage of $260, rather than the proper figure of $325 that was stipulated to by the parties. The court further ordered Beef America to pay certain medical expenses and deferred ruling on Haro's entitlement to vocational rehabilitation.

## III. ASSIGNMENTS OF ERROR

On appeal, Beef America assigns two errors. First, Beef America asserts that the compensation court erred in finding that Haro's temporary total disability began on November 25, 1995. Second, Beef America asserts that the compensation court erred in finding that Haro sustained a 40-percent loss of earning capacity.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a decision of the Workers' Compensation Court only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000); *Brouilette v. DBV Enters.*, 9 Neb. App. 757, 619 N.W.2d 482 (2000).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Owen v. American Hydraulics, supra*. Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Regarding questions of law, an appellate court in work-

ers' compensation cases is obligated to make its own determinations. *Miller v. E.M.C. Ins. Cos., supra*; *Owen v. American Hydraulics, supra*.

## 2. Temporary Total Disability

Beef America's first assigned error is that the compensation court erred in finding that Haro's temporary total disability began on November 25, 1995. Beef America asserts that Haro failed to present any medical evidence to document that he was temporarily totally disabled between November 25, 1995, and December 4, 1996. As such, Beef America asserts that without such medical testimony, the compensation court did not have sufficient competent evidence to support a finding of temporary total disability during that period. Beef America does not specifically challenge the court's finding that Haro was temporarily totally disabled through December 1997, but only specifically challenges the finding concerning the 1-year period between November 1995 and December 1996 during which Haro presented no medical documentation. As such, our discussion is limited to the court's finding of temporary total disability between November 1995 and December 1996.

According to the record presented to us, Haro was seen at an emergency room on November 22, 1995. The emergency room records indicate that Haro had previously been seen by Dr. William Becker on November 20 or 21. It appears that Dr. Becker "told [Haro] to rest and . . . allowed [him] to return to work." The doctor who saw Haro in the emergency room on November 22 referred Haro to an orthopedic surgeon, Dr. Stephen Smith, and directed Haro to "rest and not work." On November 27, Dr. Smith ordered an MRI and released Haro to work with restrictive duties. It appears that Haro did not return to work, and Beef America's records indicate that Haro's last day of employment was November 24, 1995.

The next medical evidence in the record is when Haro was seen by Dr. Froggatt on December 4, 1996. Dr. Froggatt's records indicate his opinion that Haro's degenerative disk problems were aggravated by his employment. Dr. O'Neil also opined that Haro's employment with Beef America aggravated a preexisting degenerative disk disease that had been asymp-

tomatic prior to November 1995. On appeal, Beef America has not assigned as error the compensation court's finding, based on these opinions, that Haro's injury was work related.

It has been firmly established in Nebraska that while expert witness testimony may be necessary to establish the cause of a claimed injury, the compensation court does not need to depend on expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996). See, also, *Xayaseng v. Chief Indus.*, 7 Neb. App. 911, 586 N.W.2d 472 (1998); *Bryson v. Vickers, Inc.*, 7 Neb. App. 595, 584 N.W.2d 44 (1998). As such, although Beef America is correct in noting that there is no medical documentation that Haro was temporarily totally disabled between November 1995 and December 1996, there is medical evidence to establish the cause of Haro's injury as work related, and the compensation court was free to consider Haro's own testimony in assessing whether he was totally disabled during the year in question.

Haro testified that he had not returned to work since leaving Beef America. He testified that he feels dizzy or light-headed "all the time." He testified that since suffering the injury, he cannot bend without pain from the back of his head down to the middle of his back and that he experiences pain when he sits, lies down, or walks. According to Haro, he suffers pain "all the time." When asked if he was able to work, Haro testified: "I want to work, but I can't work 'cause I'm real sick." In his deposition, Haro testified that he had never had problems with his back or neck prior to the injury at Beef America. Finally, on December 10, 1996, Dr. Froggatt's notes report that Haro was not working "because of the functional disability of the neck and arm pain."

As noted above, the compensation court was entitled to rely on Haro's testimony in determining the extent of his disability during the year between November 1995 and December 1996. Given our standard of review, the evidence in the record, and the acknowledged authority of the compensation court to make its own determinations of disability, we cannot say that the compensation court erred on this issue. This assigned error is without merit.

### 3. LOSS OF EARNING CAPACITY

Beef America next challenges the compensation court's finding that Haro suffered a 40-percent loss of earning capacity. The court-appointed vocational rehabilitation counselor completed a loss of earning power evaluation. In the evaluation, she concluded that Haro's average weekly wage at the time of the injury was $260. She then considered the permanent impairment ratings and permanent work restrictions recommended by Drs. Froggatt and O'Neil. Because Drs. Froggatt and O'Neil reached different impairment ratings and recommended different permanent physical restrictions, the vocational rehabilitation counselor reached two separate conclusions as to Haro's overall loss of earning capacity. The counselor concluded that based on Dr. Froggatt's opinions, Haro suffered a 37.7-percent overall loss of earning capacity. The counselor concluded that based on Dr. O'Neil's opinions, Haro suffered only a 5-percent overall loss of earning capacity.

The compensation court considered the vocational rehabilitation counselor's two different opinions concerning Haro's loss of earning capacity. Of the two opinions, the court chose to "give greater weight to the opinions of Dr. Froggatt." The court concluded that Dr. Froggatt treated Haro over a longer period of time than did Dr. O'Neil and that Dr. Froggatt performed the surgery on Haro, thus making Dr. Froggatt's opinions more credible than Dr. O'Neil's. However, rather than setting Haro's loss of earning capacity at 37.7 percent, as the vocational rehabilitation counselor recommended based on Dr. Froggatt's opinions, the court found Haro's lost earning capacity to be 40 percent. The court attributed this increase to the fact that the vocational rehabilitation counselor based her opinion on the belief that Haro's average weekly wage at the time of the injury was $260, while the parties had specifically stipulated that it was $325. On appeal, Beef America challenges both the court's acceptance of the valuation based on Dr. Froggatt's opinions and the court's increasing of the counselor's opinion from 37.7 percent to 40 percent.

There is evidence in the record to support the court's conclusions that Dr. Froggatt treated Haro over a longer period of time and was the physician who performed the surgery on Haro. As

such, there is credible evidence in the record to support the court's factual conclusion that Dr. Froggatt's opinions concerning Haro's permanent impairment and physical restrictions were entitled to more weight than those of Dr. O'Neil. As such, given our standard of review and the evidence in the record, we cannot say the compensation court erred in choosing Dr. Froggatt's opinions over Dr. O'Neil's.

However, the fact that the court was justified in choosing Dr. Froggatt's opinions does not end our consideration of whether the permanent loss of earning capacity awarded by the court contains support in the record. As noted above, the vocational rehabilitation counselor opined that Haro's permanent loss of earning capacity was 37.7 percent based on Dr. Froggatt's impairment rating and physical restrictions. Because the vocational rehabilitation counselor was operating under the mistaken belief that Haro's average weekly wage at the time of the injury was $260, rather than $325, the court concluded that the 37.7-percent figure needed to be increased "slightly" to 40 percent.

■ Neb. Rev. Stat. § 48-121(2) (Reissue 1998) provides that for permanent partial disability, an employee is entitled to compensation at the rate of "sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter." Using this formula, as well as the vocational rehabilitation counselor's belief that Haro was receiving $260 per week at the time of the injury and the counselor's ultimate conclusion that Haro suffered a 37.7-percent loss of earning capacity, it is apparent that the counselor concluded that Haro's earning capacity after the injury was approximately $161.98 (.623 × $260 = $161.98). Using this formula, as set forth in the statute, Haro would have been entitled to weekly benefits of $65.38 (.667 × ($260 − $161.98) = $65.38).

Using this formula, as set forth in the statute, the court's increase of Haro's lost earning capacity from 37.7 percent to 40 percent to account for the discrepancy in the wages Haro was earning at the time of the injury appears arbitrary. In fact, if the proper average weekly wage figure of $325 were used in the formula, along with the counselor's opinion that Haro's postinjury earning capacity was $161.98, the actual lost earning capacity

would be closer to 49.8 percent. Additionally, using the correct average weekly wage figure and the counselor's opinion concerning Haro's postinjury earning capacity, Haro would have been entitled to weekly benefits of approximately $108.73 (.667 × ($325 − $161.98) = $108.73).

As such, there is competent evidence in the record to indicate that Haro suffered a loss of earning capacity as high as 49.8 percent. The compensation court awarded benefits for only a 40-percent loss of earning capacity. Although the record indicates the award should have been higher than it was, Haro has not filed a cross-appeal, and the only issue before us is whether the court erred in increasing the loss of earning capacity from 37.7 percent as suggested by the vocational rehabilitation counselor. Because we find the evidence supports a loss of earning capacity of 49.8 percent, we cannot say that Beef America suffered any prejudice from the court awarding a 40-percent loss of earning capacity benefit. This assigned error is without merit.

## V. CONCLUSION

We find no merit to either of Beef America's assigned errors. There is competent evidence in the record to support a finding that Haro's temporary total disability began in November 1995, there is competent evidence in the record to support the court's decision to accept the loss of earning capacity calculation based upon Dr. Froggatt's opinions, and Beef America was not prejudiced by the court's award of benefits based on a 40-percent loss of earning capacity. The compensation court's award is, accordingly, affirmed.

AFFIRMED.